**KNEUPPER & COVEY, PC**
Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
Tel: 512-420-8407

*Attorneys for Plaintiff BiT Global Digital Limited*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BIT GLOBAL DIGITAL LIMITED,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>COINBASE GLOBAL, INC.<br><br>　　　　Defendant. | Case No.: 3:24-cs-09019-AMO<br><br>**PLAINTIFF'S BIT GLOBAL DIGITAL LIMITED'S OPPOSITION TO COINBASE'S GLOBAL INC.'S MOTION TO DISMISS**<br><br>Hearing Date: April 3, 2025<br>Time: 2:00 pm<br>Judge: Hon. Araceli Martinez-Olguín |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II.  LEGAL STANDARD ...........................................................................................1

   A.  Coinbase Ignores the Legal Standard for Plausibility ...............................1

   B.  Coinbase Improperly Submits External Evidence......................................2

III.  ARGUMENT ......................................................................................................3

   A.  Exclusionary Conduct ................................................................................3

      1.  BiT's Allegations Go Beyond Coinbase Introducing a Product .........3

      2.  BiT's Claims Fall Within the Aspen Exception for Refusals to Deal.................4

      3.  The Harcourt Requirements Are Met ..................................................7

      4.  Plaintiff Has Properly Alleged Harm to Competition .........................9

   B.  BiT Has Plausibly Alleged the Relevant Market ......................................10

   C.  BiT Has Plausibly Alleged Monopoly Power ...........................................13

   D.  BiT Has Suffered an Antitrust Injury .......................................................15

   E.  BiT's Lanham Act Claim is Properly Plead ..............................................16

   F.  BiT's UCL Claim is Properly Pled............................................................19

      1.  BiT has UCL Standing .......................................................................19

      2.  BiT's UCL Unfair Prong Claim is Properly Pled..............................20

      3.  BiT's UCL Unlawful Prong Claim is Properly Pled .........................20

      4.  BiT's UCL Fraudulent Prong Claim is Properly Pled.......................22

   G.  BiT's Interference Claims Are Properly Pled or Can Be Amended.....................23

   H.  BiT's Trade Libel Claim is Properly Pled ................................................24

IV.  AMENDMENT SHOULD BE PERMITTED IF NEEDED....................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3   *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,

4      836 F.3d 1171 (9th Cir. 2016) ................................................................. 5, 19

5   *Am. Prof'l Testing Serv. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns*,

6      108 F.3d 1147 (9th Cir. 1997) ................................................................. 9, 10

7   *ARF Dashnaktsutyun, W. U.S.A. v. Armenian Revolutionary Fed'n WUSA, Inc.*,

8      No. 2:21-cv-05594-FWS (RAOx),

9      2023 U.S. Dist. LEXIS 92895 (C.D. Cal. May 26, 2023) ........................... 31

10  *Arista Networks, Inc. v. Cisco Sys.*,

11     No. 16-cv-00923-BLF, 2018 U.S. Dist. LEXIS 241347 (N.D. Cal. May 9, 2018)......... 9

12  *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,

13     472 U.S. 585, 105 S. Ct. 2847 (1985) ......................................................... 4

14  *Auvil v. CBS "60 Minutes"*,

15     67 F.3d 816 (9th Cir. 1995) ......................................................................... 33

16  *Azzolini v. Corts Tr. II for Provident Fin. Tr. I (In re UNUMProvident Corp. Sec. Litig.)*,

17     396 F. Supp. 2d 858 (E.D. Tenn. 2005) ...................................................... 20

18  *Barnes-Hind, Inc. v. Superior Court*,

19     181 Cal. App. 3d 377, 226 Cal. Rptr. 354 (1986) ....................................... 34

20  *Beaton v. SpeedyPC Software*,

21     907 F.3d 1018 (7th Cir. 2018) ..................................................................... 30

22  *Beyond Blond Prods., LLC v. Heldman*,

23     No. CV 20-5581 DSF (GJSx),

24     2022 U.S. Dist. LEXIS 104374 (C.D. Cal. Mar. 3, 2022) ........................... 23

25  *Bobbleheads.com, Ltd. Liab. Co. v. Wright Bros., Inc.*,

26     259 F. Supp. 3d 1087 (S.D. Cal. 2017) ....................................................... 23

27  *Caccuri v. Sony Interactive Entm't LLC*,

28     No. 21-cv-03361-RS, 2023 U.S. Dist. LEXIS 20668 (N.D. Cal. Feb. 7, 2023) ......... 5, 6

*Cal. Sportfishing Prot. All. v. Pac. States Indus.*,
No. 15-cv-01482-JD,
2015 U.S. Dist. LEXIS 127871 (N.D. Cal. Sep. 22, 2015) ..............................................2

*Cappello Glob., Ltd. Liab. Co. v. Temsa Ulaşim Araçlari Sanayi Ve Ticaret A.Ş.*,
No. 2:19-cv-10710-MEMF-KS,
 2024 U.S. Dist. LEXIS 187474 (C.D. Cal. Oct. 15, 2024) ........................................31

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999)..................................25, 26

*Cisco Sys. v. Beccela's Etc., LLC*,
403 F. Supp. 3d 813 (N.D. Cal. 2019) ....................................................................22

*Clifford v. Quest Software Inc.*,
38 Cal. App. 5th 745, 251 Cal. Rptr. 3d 269 (2019) .....................................................24

*Coastal Abstract Serv. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) ....................................................................................22

*Consumer Justice Ctr. v. Olympian Labs, Inc.*,
99 Cal. App. 4th 1056, 121 Cal. Rptr. 2d 749 (2002) .....................................................27

*Corson v. Toyota Motor Sales, U.S.A., Inc.*,
No. 2:12-cv-08499-JGB-VBK,
2013 U.S. Dist. LEXIS 189262 (C.D. Cal. July 18, 2013) ............................................30

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
393 F. Supp. 3d 968 (E.D. Cal. 2019) ....................................................................22

*Delta T LLC v. MacroAir Techs., Inc.*,
No. EDCV 20-1489-GW-JPRx,
2022 U.S. Dist. LEXIS 210985 (C.D. Cal. Nov. 18, 2022) ...........................................22

*Diva Limousine, Ltd. v. Uber Techs., Inc.*,
392 F. Supp. 3d 1074 (N.D. Cal. 2019)....................................................................26

*Emulex Corp. v. Broadcom Corp.*,
  No. SACV 09-01310 JVS(RNBx),
  2010 U.S. Dist. LEXIS 153231 (C.D. Cal. June 7, 2010)...................................... 10, 11

*Erlich v. Etner*,
  224 Cal. App. 2d 69 (1964) ................................................................................ 33

*Falk v. GMC*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................................... 29

*Foremost Int'l Tours, Inc. v. Qantas Airways, Ltd.*,
  379 F. Supp. 88 (D. Haw. 1974) ......................................................................... 16

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
  703 F.2d 534 (9th Cir. 1983) ................................................................................ 4

*Franklin v. Dynamic Details, Inc.*,
  116 Cal. App. 4th 375, 10 Cal. Rptr. 3d 429 (2004) ........................................... 33

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ............................................................................. 5, 7

*FTC v. Texaco*,
  393 U.S. 223 (1968) ........................................................................................... 28

*Galindo v. Financo Fin., Inc.*,
  No. C 07-03991 WHA,
  2008 U.S. Dist. LEXIS 102875 (N.D. Cal. Dec. 9, 2008) ................................... 34

*GetFugu, Inc. v. Patton Boggs LLP*, ....................................................................
  220 Cal. App. 4th 141, 162 Cal. Rptr. 3d 831 (2013) ......................................... 32

*Goldblatt v. FDIC*,
  105 F.3d 1325 (9th Cir. 1997) ............................................................................ 30

*Hallmark Indus. v. Reynolds Metals Co.*,
  489 F.2d 8 (9th Cir. 1973) .................................................................................. 17

*Home Placement Serv., Inc. v. Providence J. Co.*,
  682 F.2d 274 (1st Cir. 1982) .............................................................................. 15

*Hurst Int'l, LLC v. Sinclair Sys. Int'l, LLC*,
  No. CV 17-8070-VAP (ASx),
  2018 U.S. Dist. LEXIS 224964 (C.D. Cal. May 18, 2018)...........................................15

*In re eBay Seller Antitrust Litig.*,
  545 F. Supp. 2d 1027 (N.D. Cal. 2008)...................................................................13, 14

*Inga v. Bellacor*,
  No. 2:19-cv-10406-MWF-MRW,
  2020 U.S. Dist. LEXIS 188297 (C.D. Cal. July 17, 2020) ..........................................28

*Jack Winter, Inc. v. Koratron Co.*,
  375 F. Supp. 1 (N.D. Cal. 1974)..................................................................................17

*Johnstech Int'l Corp. v. Jf Microtechnology SDN BHD*,
  No. 14-cv-02864-JD, 2016 U.S. Dist. LEXIS 104380 (N.D. Cal. Aug. 8, 2016).........34

*Keith Feder, M.D., Inc. v. Aetna Life Ins. Co.*,
  No. 2:23-cv-07026-JLS-JPR,
  2024 U.S. Dist. LEXIS 129547 (C.D. Cal. June 25, 2024)..........................................25

*Kindred Studio Illustration & Design, LLC v. Elec. Commun. Tech., LLC*,
  No. CV 18-7661-GW(GJSx),
  2018 U.S. Dist. LEXIS 223304 (C.D. Cal. Dec. 3, 2018)............................................28

*Kramer v. Coinbase, Inc.*,
  105 Cal. App. 5th 741, 326 Cal. Rptr. 3d 217 (2024) .................................................25

*Lange v. TIG Ins. Co.*,
  68 Cal. App. 4th 1179, 81 Cal. Rptr. 2d 39 (1998) .....................................................32

*LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*,
  No. 18-cv-02573-YGR, 2019 U.S. Dist. LEXIS (N.D. Cal. Jan. 10, 2019) .....25, 26, 27

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555, 112 S. Ct. 2130 (1992) .........................................................................31

*Marin Tug & Barge, Inc. v. Westport Petrol., Inc.*,
  271 F.3d 825 (9th Cir. 2001)........................................................................................31

*MetroNet Servs. Corp. v. Qwest Corp.*,
    383 F.3d 1124 (9th Cir. 2004) ....................................................................... 7

*Momento, Inc. v. Seccion Amarilla USA*,
    No. C 09-1223 SBA, 2009 U.S. Dist. LEXIS 85295 (N.D. Cal. Sep. 16, 2009) .......... 17

*Morris Communs. Corp. v. PGA Tour, Inc.*,
    364 F.3d 1288 (11th Cir. 2004) ..................................................................... 6

*Newcal Indus. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ......................................................... 12, 13, 16

*Novell, Inc. v. Microsoft Corp.*,
    731 F.3d 1064 (10th Cir. 2013) ..................................................................... 6

*Oracle USA, Inc. v. Rimini St., Inc.*,
    No. 2:10-CV-00106-LRH-PAL,
    2010 U.S. Dist. LEXIS 116249 (D. Nev. Oct. 29, 2010) ............................................. 21

*Pac. Steel Grp. v. Commer. Metals Co.*,
    600 F. Supp. 3d 1056 (N.D. Cal. 2022) .................................................... 14, 15

*Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.*,
    19 Cal. App. 5th 258, 227 Cal. Rptr. 3d 862 (2018) ........................................ 29

*Potters Med. Ctr. v. City Hosp. Asso.*,
    800 F.2d 568 (6th Cir. 1986) ....................................................................... 16

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
    No. SACV 12-2102-JLS (ANx),
    2013 U.S. Dist. LEXIS 169856 (C.D. Cal. Dec. 2, 2013) ............................................ 15

*Pro-Com Prods., Inc. v. Optimal Sante, LLC*,
    No. 2:20-cv-08369-FLA (Ex),
    2023 U.S. Dist. LEXIS 194592 (C.D. Cal. Oct. 30, 2023) .......................................... 32

*Queen City Pizza v. Domino's Pizza*,
    124 F.3d 430 (3d Cir. 1997) ....................................................................... 14

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,
   No. 16-cv-3059-BTM-AGS,
   2017 U.S. Dist. LEXIS 171757 (S.D. Cal. Oct. 16, 2017)............................................23

*Rose v. J.P. Morgan Chase*, *N.A.*,
   2012 U.S. Dist. LEXIS 108559 (E.D. Cal. Aug. 2, 2012) ...........................................30

*Rubenstein v. Neiman Marcus Grp. Ltd. Liab. Co.*,
   687 F. App'x 564 (9th Cir. 2017) (unpublished) ........................................................27

*Schmitt v. SN Servicing Corp.*,
   No. 21-cv-03355-WHO,
   2021 U.S. Dist. LEXIS 219292 (N.D. Cal. Nov. 12, 2021) ........................................28

*Simon & Simon, PC v. Align Tech*., Inc.,
   533 F. Supp. 3d 904 (N.D. Cal. 2021)......................................................................6, 7

*Simpson Strong-Tie Co. v. Mitek Inc.*,
   No. 20-cv-06957-VKD, 2021 U.S. Dist. LEXIS 66024 (N.D. Cal. Apr. 5, 2021) .......21

*Skydive Ariz., Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012) ..................................................................................23

*Somers v. Apple, Inc. (In re Apple iPod iTunes Anti-Trust Litig.)*,
   No. C 05-00037 JW, 2010 U.S. Dist. LEXIS 64772 (N.D. Cal. June 29, 2010) ...........6

*Spice Jazz LLC v. Youngevity Int'l, Inc.*,
   No. 19-cv-0583-BAS-DEB,
   2020 U.S. Dist. LEXIS 209343 (S.D. Cal. Nov. 9, 2020)...........................................24

*Standing Comm. on Discipline of the United States Dist. Court v. Yagman*,
   55 F.3d 1430 (9th Cir. 1995) ....................................................................................33

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011)..............................................................................2, 20

*Subspace Omega, LLC v. Amazon Web Servs.*,
   No. 2:23-cv-01772-TL,
   2024 U.S. Dist. LEXIS 232037 (W.D. Wash. Dec. 23, 2024) .......................................8

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
  875 F.2d 1369 (9th Cir. 1989) ...................................................................... 17

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011) ........................................................................ 24

*Tucker v. Apple Comput., Inc.*,
  493 F. Supp. 2d 1090 (N.D. Cal. 2006) .......................................................... 5

*TYR Sport Inc. v. Warnaco Swimwear Inc.*,
  679 F. Supp. 2d 1120 (C.D. Cal. 2009) ........................................................... 9

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .......................................................................... 3

*Upper Deck Co. v. Flores*,
  569 F. Supp. 3d 1050 (S.D. Cal. 2021) ......................................................... 21

*Van de Kamp v. Bank of Am.*,
  204 Cal. App. 3d 819, 251 Cal. Rptr. 530 (1988) ......................................... 30

*Vidal Sassoon, Inc. v. Bristol-Myers Co.*,
  661 F.2d 272 (2d Cir. 1981) ......................................................................... 21

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002) ...................................................................... 20

*William H. Morris Co. v. Grp. W, Inc.*,
  66 F.3d 255 (9th Cir. 1995) ..................................................................... 20, 21

*Zhang v. Superior Court*,
  57 Cal. 4th 364, 159 Cal. Rptr. 3d 672, 304 P.3d 163 (2013) ...................... 27

**Rules**

Fed. R. Civ. P. 9 ............................................................................................... 14

1    **I.    <u>INTRODUCTION</u>**

2    A Defendant must move to dismiss the Complaint it has, not the Complaint it wishes

3    it had. But throughout Coinbase's Motion to Dismiss, it tries to pretend away inconvenient

4    factual allegations that are fatal to its motion. Coinbase repeatedly tells the Court, falsely,

5    that certain facts have not been pled—when even a cursory reading of the Complaint

6    would reveal that they were pled in detail. In some cases, it outright misrepresents the law

7    as well. If Coinbase's arguments were strong, it would not have to play pretend. One of

8    the biggest signs of weakness in a motion to dismiss is making false claims about what is

9    actually in the Complaint—because a defendant with a strong motion wouldn't be forced

10    to hope and pray that the Court doesn't actually read it before dismissing it. But as the

11    Court will see, this contortion of the allegations is endemic throughout Coinbase's motion.

12    Coinbase also spends much of its motion attempting to hurl rocks at a non-party,

13    Justin Sun. But allegations of SEC lawsuits ring hollow when Coinbase itself has been

14    sued by the SEC. And Coinbase's own CEO has condemned the Biden administration's

15    investigations of the cryptocurrency industry to the point that he has not only heavily

16    implied that Senator Elizabeth Warren engaged in criminal conduct, but threatened to fire

17    any law firms who hire former Biden administration lawyers. Coinbase's claims that it

18    delisted wBTC over concerns about associating with someone who had been sued by the

19    Biden administration reek of pretext—and must be decided by a jury.

20    **II.    <u>LEGAL STANDARD</u>**

21    **A. Coinbase Ignores the Legal Standard for Plausibility**

22    Throughout its motion, Coinbase repeats the phrase "plausible" as if it were a

23    magical mantra that could defeat a lawsuit through sheer volume of repetition. But

24    Coinbase does not even reference, let alone explain, the legal standard the Court must

25    actually apply as to plausibility. Plaintiff's allegations are entitled to a presumption of

26    truth if they do not "simply recite the elements of a cause of action," but instead contain

27    sufficient allegations of underlying facts to give fair notice of the basis for the claims:

28

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable.

*Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011).

Defendants' motion skirts the bounds of acceptable conduct (and in some cases, oversteps them) by utilizing misleading partial quotations or repeatedly making outright false statements about the contents of the Complaint. These misleading statements have a common theme: asserting that the only thing contained in the Complaint were bare recited elements of a cause of action, sometimes when underlying facts were pled **<u>immediately after</u>** the partial quotation by Coinbase. That Coinbase felt the need to do this speaks volumes about the merits of its motion. But in addition to candor concerns, the Court should not permit "sandbagging" in Coinbase's reply. *Cal. Sportfishing Prot. All. v. Pac. States Indus.*, No. 15-cv-01482-JD, 2015 U.S. Dist. LEXIS 127871 at *6 (N.D. Cal. Sep. 22, 2015) ("Raising new arguments in a reply brief is classic sandbagging, and the Court will not tolerate it."). To take one of the worst examples, when Coinbase partially quotes the Complaint and falsely states that as to materiality under the Lanham Act, "[t]he Complaint alleges only the element itself" and nothing else, dkt. 33 at 17-18, that should be the argument Coinbase is stuck with. Having argued that the Complaint pled only conclusory legal elements, Coinbase should not be permitted to morph those arguments on reply into an attack on factual pleadings which did, in fact, exist.

## B. Coinbase Improperly Submits External Evidence

Another "tell" as to the weakness of Coinbase's motion is its effort to get the Court to consider evidence outside of the pleadings in ruling on the motion. Coinbase heavily relies on years-old news articles and urges the Court to commit error by considering their contents. Dkt. 33 at 4. Coinbase is not merely asking the Court to use those articles to establish dates of public information—it is asking the Court to rule on its defenses without

discovery, and on a motion to dismiss, which is error. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). Coinbase's proffered defense is a bizarre one – that it was concerned about a lawsuit by the SEC, or allegations from three years ago about the Southern District of New York. This is certainly a strange thing to say. Coinbase itself has been sued by the SEC.[1] Coinbase's CEO and its general counsel have taken to Twitter to not only bash the SEC, but to threaten to fire any law firms which hired former SEC employees.[2] Coinbase's CEO accused the SEC of filing "frivolous cases" and demanded they apologize to the American people.[3] Coinbase's CEO also accused the SEC chair and Senator Elizabeth Warren of attacking crypto industry participants in an effort to "unlawfully kill our entire industry" and said "my guess is we'll find Elizabeth Warren's fingerprints all over it…."[4] He then heavily implied that he would be attempting to seek criminal charges against Senator Warren.[5]

Given that Coinbase has expressed such extreme vitriol towards the SEC and the Biden administration, a jury could certainly find it **plausible** that it was not actually concerned about lawsuits by the Biden administration. If Coinbase believed (as its CEO stated) that Senator Warren was engaging in a secret criminal effort to usurp President Biden's authority and unlawfully target crypto industry participants, it is hard to believe Coinbase's excuses. It is certainly **plausible** that the excuses Coinbase is now giving were just pretexts to get rid of its competitor, wBTC. But all this should be for summary judgment, and then for the jury.

## III.  ARGUMENT

### A. Exclusionary Conduct

#### 1. BiT's Allegations Go Beyond Coinbase Introducing a Product

---

[1] *See* https://www.sec.gov/newsroom/press-releases/2023-102;
[2] *See* https://www.reuters.com/legal/government/coinbase-ceo-legal-chief-warn-law-firms-over-sec-hires-2024-12-03/.
[3] *See* https://x.com/brian_armstrong/status/1851103674744832334.
[4] *See* https://x.com/brian_armstrong/status/1861890800268775923.
[5] *Id.*

Coinbase sets up—and responds to—a straw man, arguing that introducing a new product such as cbBTC cannot be exclusionary conduct under antitrust law. But the case it cites makes clear that introducing a new product can be part of the facts underlying an antitrust claim: "product introduction must be alleged to involve some associated conduct which constitutes an anticompetitive abuse or leverage of monopoly power, or a predatory or exclusionary means of attempting to monopolize the relevant market, rather than aggressive competition on the merits." *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 545-46 (9th Cir. 1983). That is what has been alleged here, and Coinbase must argue against the Complaint as it was actually pled, not how it wishes it was pled.

### 2. BiT's Claims Fall Within the *Aspen* Exception for Refusals to Deal

Coinbase acknowledges that there is an exception to the general ability of a company to refuse to deal with competitors, established in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 105 S. Ct. 2847 (1985). It argues that the three factors are not properly pled—but it focuses on issues which cannot be resolved on a motion to dismiss, such as its own motives. And later in its brief, it acknowledges that there is also a second exception—the essential facilities doctrine, described in *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1185 (9th Cir. 2016).[6]

**First**, as to *Aspen*, Coinbase claims "there are no allegations that listing wBTC on its exchange was profitable for Coinbase. That alone is dispositive." Dkt. 33 at 6. But in fact, this was pled repeatedly. Dkt. 1 at ¶ 40 (pleading that by delisting wBTC, Coinbase was "taking short term-losses to keep profits for itself long-term as its knock-off gains market share"); *id.* at ¶ 52 ("its plan is to take short term losses in order to dominate the market and make profits in the long run"). It is sufficient to describe the "process" by which profits are made under this factor without actually quantifying them. *Caccuri v. Sony Interactive Entm't LLC*, No. 21-cv-03361-RS, 2023 U.S. Dist. LEXIS 20668 at *3-4 (N.D. Cal. Feb. 7, 2023).

---

[6] This exception was likewise pled, but will be addressed in the "monopoly power" section where Coinbase addressed it.

**Second**, "irrational profit sacrifice" is not an element of the *Aspen* exception, dkt. 33 at 6—that is Coinbase's own self-serving rewording. The element is instead whether "the only conceivable rationale or purpose is 'to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition'…." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 994 (9th Cir. 2020). While Coinbase proffers its own alternative rationales—that it was trying to prevent wBTC from drawing investors to a rival asset, or trying to avoid risk relating to Justin Sun—it is improper for the Court to resolve this element of *Aspen* on a motion to dismiss. *Tucker v. Apple Comput., Inc.*, 493 F. Supp. 2d 1090, 1101 (N.D. Cal. 2006) ("Apple has presented various business rationales for its product decisions; however, the existence of valid business reasons in antitrust cases is generally a question of fact not appropriate for resolution at the motion to dismiss stage."); *Simon & Simon, PC v. Align Tech., Inc.*, 533 F. Supp. 3d 904, 914-15 (N.D. Cal. 2021) (resolving competing rationales under *Aspen* is an inquiry for summary judgment or trial); *Somers v. Apple, Inc. (In re Apple iPod iTunes Anti-Trust Litig.)*, No. C 05-00037 JW, 2010 U.S. Dist. LEXIS 64772 at *23 (N.D. Cal. June 29, 2010) (holding that "the validity of a claimed business justification is a question of fact" and refusing to decide a summary judgment motion on the issue until fact discovery was complete); *Caccuri*, 2023 U.S. Dist. LEXIS 20668 at *5 (holding that other rationales offered by defendants under this factor are affirmative defenses not subject to a motion to dismiss).

Coinbase heavily relies on *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1066 (10th Cir. 2013)—an out-of-Circuit case where this issue was decided **after an eight-week trial** on a complete factual record consisting of 16,696 pages. It also relies on *Morris Communs. Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1292 (11th Cir. 2004)—decided "[a]fter extensive pre-trial discovery" on a summary judgment motion. But on a 12(b)(6) motion, allegations of a short-term sacrifice of profits are enough to support an inference that this element is met. *Simon & Simon*, 533 F. Supp. 3d at 914. The Complaint supports its allegations with the language of a Coinbase whitepaper which makes clear that it has a short-term plan to charge nothing for its cbBTC product. Dkt. 1 at ¶ 52. It explains the

alleged business rationale using Coinbase's own statements, *id.* at ¶ 47-52. It pleads that delisting wBTC will cause short term losses to Coinbase. *Id.* at ¶ 40. It specifically rebuts Coinbase's proffered business justification (that wBTC was supposedly risky) by pointing at length to Coinbase's decision to list risky, valueless memecoins. *Id.* at ¶ 62-71.

**Third**, the Complaint pleads at length that Coinbase is providing cryptocurrency listing services to a variety of non-competing cryptocurrencies—including memecoins which have zero value whatsoever. Dkt. 1 at at ¶ 62-71. Coinbase does not (and cannot) dispute that these other cryptocurrencies it lists are risky and have no inherent value. But crucially, **they are not competitors with Coinbase.** The third *Aspen* factor asks whether "the refusal to deal involves products that the defendant already sells in the existing market to other similarly situated customers." *FTC v. Qualcomm Inc.*, 969 F.3d at 994. The Complaint alleges that Coinbase lists these other cryptocurrencies regardless of risk.

The very authority Coinbase cites—*MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1133 (9th Cir. 2004)—makes clear that the key question on this third factor is whether Coinbase provides its listing services to non-competitors. If so, then this is not the kind of case that requires "central planning" by a court to administer. The 9th Circuit in *MetroNet* reasoned that "if the defendant already sells the product in an existing market to certain customers but merely refuses to sell to its competitors, the court can impose a judicial remedy that does not require the court to 'assume the day-to-day controls characteristic of a regulatory agency.'" *Id.* (citations omitted). Here, Coinbase can simply be ordered to relist wBTC, just as it lists dogcoins, catcoins, and frogcoins. There is not even a contract between BiT and Coinbase—so there are no pricing or contractual terms for the Court to administer. Coinbase can simply go back to listing wBTC on its exchange.

In *Subspace Omega, LLC v. Amazon Web Servs.*, No. 2:23-cv-01772-TL, 2024 U.S. Dist. LEXIS 232037 (W.D. Wash. Dec. 23, 2024), a court applied the *Aspen* exception to "peering"—an agreement by a company to allow its network to communicate with another company's network. The court concluded that administrability concerns were "virtually nonexistent here" because the defendant "peered" a number of other entities and the court

1    could simply base any order on the defendants' "own prior guidelines and best practices."

2    *Id.* at *27. The court further found that because the defendant allowed "peering" with

3    various non-competitors, but terminated peering for a competitor, the third *Aspen* factor

4    was met and an anticompetitive motive could be inferred. *Id.* at *30-31. Here, Coinbase is

5    alleged to have continued to list the riskiest cryptocurrencies possible, even after it chose

6    to delist wBTC once its own competing product was launched. Dkt. 1 at ¶ 53-55, 62-71.

7    And *Subspace* makes clear that Coinbase's effort to import a requirement that BiT plead

8    that "**all** digital asset issuers" were offered these services, dkt. 33 at 8 (emphasis added),

9    is not actually the law. Nothing in the factors suggests it must be "all"—and in *Subspace*,

10    the court rejected similar arguments that the company had refused numerous applications.

11    *Subspace*, 2024 U.S. Dist. LEXIS 232037 at *26-27.

### 3.  The *Harcourt* Requirements Are Met

13    Plaintiff's Sherman Act claims are **partially** based on false statements and

14    implications made by Coinbase. Coinbase argues that the six-factor test articulated in *Am.*

15    *Prof'l Testing Serv. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns*, 108 F.3d 1147

16    (9th Cir. 1997) has not been met as to this aspect of the antitrust claims. At least one court

17    has specifically confronted allegations of a "FUD" campaign and concluded that, if the

18    FUD was partly true, then *Harcourt* was inapplicable in the first place. *Arista Networks,*

19    *Inc. v. Cisco Sys.*, No. 16-cv-00923-BLF, 2018 U.S. Dist. LEXIS 241347 at *41 (N.D.

20    Cal. May 9, 2018). This is exactly what Coinbase argues here, dkt. 33 at 9—which under

21    *Arista* would mean the *Harcourt* requirements do not apply here, either.

22    If *Harcourt* applies, Coinbase argues that the first factor—that the statements were

23    "clearly false"—has not been plausibly pled. But what Plaintiff has pled here is similar to

24    what has survived under *Harcourt* in other cases. *See TYR Sport Inc. v. Warnaco*

25    *Swimwear Inc.*, 679 F. Supp. 2d 1120, 1132-33 (C.D. Cal. 2009). And again, Plaintiff's

26    allegations need only be plausible—not true, and not even probable, because the discovery

27    process is what reveals the truth, not self-serving declarations at the motion to dismiss

28    stage. BiT pled facts suggesting that Coinbase's statements about wBTC were false. Dkt.

1 at ¶ 55-58, 97, 101. BiT plead that contrary to its statements, "Coinbase did not perform
an objective analysis against set standards." Dkt. 1 at ¶ 58. BiT provided supporting
allegations about obviously risky cryptocurrencies—which admittedly have no value at
all—being onboarded even after wBTC was delisted. *Id.* ¶ 62-72. And the sworn
statements Coinbase urges the Court to review in violation of the standards under 12(b)(6),
dkt. 33 at 25, simply raise more questions than answers. They attach no internal
documentation outlining this "review." And their supposed basis—that Coinbase would
never, ever, ever associate with someone sued by the SEC or investigated by the Biden
administration—make little sense given its CEO's Twitter rants and its own legal troubles.
A jury could plausibly believe that Coinbase did not, in fact, follow a neutral listing
standard as to wBTC as it told the public, and that Coinbase's "concern" about a SEC
investigation was a pretext for what was in reality an effort to kneecap its competition.

Coinbase argues that the statements do not satisfy the "prolonged periods"
requirement of *Harcourt*. But the statements at issue were made **on websites**, including a
post on X. When statements are alleged to be made on websites, courts have noted that
they could be considered analogous to an ongoing billboard, and that whether this prong
of *Harcourt* has been met is "a particularly factual question inappropriate for dismissal on
the pleadings." *Emulex Corp. v. Broadcom Corp.*, No. SACV 09-01310 JVS(RNBx), 2010
U.S. Dist. LEXIS 153231 at *20-21 (C.D. Cal. June 7, 2010). Coinbase's tweet, dkt. 1 at
¶ 72, remains live and has been live for three months. In *Harcourt*, the 9th Circuit
described the requirement as being "more-than-temporary." *Harcourt*, 108 F.3d at 1151.
In *Harcourt*, two months was a sufficient period that the 9th Circuit did not even suggest
this factor was at issue, ruling on another factor instead. And since this lawsuit was filed,
Coinbase's general counsel has reaffirmed the statements in posts on X on 12/13/24,
12/17/24, and 1/25/25, which could be plead with leave to amend.

Coinbase also argues that BiT has not pled facts showing that it could not have
"pushed back" to neutralize the FUD. At the outset, Coinbase misstates the standard: it is
not whether the statements are "reasonably susceptible" to neutralization, dkt. 33 at 10,

but whether they are "**<u>readily</u>**" susceptible to neutralization. BiT is a much smaller company than Coinbase—and a smaller company's lack of resources has been recognized as a reason it could not neutralize statements under this factor. *Emulex*, 2010 U.S. Dist. LEXIS 153231 at *21-22. In addition, the nature of Coinbase's statements make them particularly difficult to neutralize—because as BiT pled, they implied Coinbase possessed some unknown, non-public information which it relied on in its decision. Dkt. 1 at ¶ 102. The large number of viewers—at least 500,000—further suggests this was impossible. *Id.* at ¶ 98. *Emulex* is again instructive—an example there which *could* be neutralized were statements made privately to a small number of business partners, who could be contacted directly. *Emulex*, 2010 U.S. Dist. LEXIS 153231 at *21-22.

As to materiality, Coinbase repeats its false claim that materiality was not plead other than to repeat the elements (which as discussed in the Lanham Act section below, rests on a highly concerning partial quotation of the Complaint). Materiality was clearly pled, dkt. 1 at ¶ 61, 97-98, 102, 139—and even if the misleading partial quotation was somehow unintentional, Coinbase should not be allowed to "morph" this argument on reply. And as to the remaining factors, Coinbase does not even argue them for good reason. BiT plead facts supporting reasonable reliance, dkt. 1 at ¶ 102, 139-40, and that the statements were made to buyers without knowledge, *id.* at ¶ 98, 139.

### 4.  Plaintiff Has Properly Alleged Harm to Competition

Coinbase's entire argument here rests on yet another false statement to the Court: "Harm to a single competitor is not enough, and **<u>that is all BiT has even purported to allege</u>**." Dkt. 33 at 10 (emphasis added). But immediately after pleading injury to itself, BiT expressly pled that "competition in the market for wrapped Bitcoin has been injured as well" because (1) "[t]he delisting of wBTC sends a signal that competitors to cbBTC may be delisted at any time at Coinbase's whim," dkt. 1 at ¶ 79, (2) it "discourages application developers and other third parties in the market from developing technologies compatible with wrapped Bitcoin competitors to cbBTC generally, because they know that Coinbase may arbitrarily exclude them from its exchange in the future as well," *id.*,

and (3) "[e]xcluding wBTC from third party applications excludes it as a potential option for users, which further injures competition in the market," *id.* There is absolutely no excuse for Coinbase's misrepresentation here—and Coinbase should not be permitted to morph this argument into something more candid or viable on reply. As for the claim that "the remaining 95% of wBTC remains freely circulating, and competition has not been harmed," dkt. 33 at 11, this does not address the allegations of injury to competition which BiT actually pled. It is at best an argument as to injury to BiT itself (a separate requirement discussed below), and not a good one: injury need not be total to provide standing.

### B. BiT Has Plausibly Alleged the Relevant Market

As to both market power and defining the relevant market, "[t]here is no requirement that these elements of the antitrust claim be pled with specificity." *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1044-45 (9th Cir. 2008). "An antitrust complaint therefore survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect. And since the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial." *Id.* at 1045.

Coinbase first alleges that the Complaint fails to define wrapped Bitcoin in a way that would be a valid product market. As it does throughout its motion, Coinbase is forced to play pretend, arguing that Plaintiff "never clearly identifies any distinctive characteristic of wrapped Bitcoin…." Dkt. 33 at 11. This is despite the Complaint describing the characteristics of wrapped Bitcoin at length. Dkt. 1 at ¶ 26-30. And "although the general market must include all economic substitutes, it is legally permissible to premise antitrust allegations on a submarket. That is, an antitrust claim may, under certain circumstances, allege restraints of trade within or monopolization of a small part of the general market of substitutable products." *Newcal*, 513 F.3d at 1045. Among the circumstances that may justify a submarket that does not include all economic substitutes are "industry or public recognition of the submarket as a separate economic

entity," "the product's peculiar characteristics and uses," and "distinct customers." *Id.* At the 12(b)(6) stage, as *Newcal* holds, Plaintiff need not plead any of this with specificity—these are factual issues to be dealt with post-discovery. Plaintiff expects to be able to prove, for example, that (1) distinct customers use centralized exchanges, who are less technically sophisticated and unlikely to purchase wrapped Bitcoin or any substitutes outside of an exchange, (2) regulatory issues specific to the U.S. justify the submarket, and (3) the industry recognizes centralized exchanges as a distinct submarket.

In *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027 (N.D. Cal. 2008), the court rejected a similar challenge in a motion to dismiss. The court first noted that a relevant market "is generally defined as a pool of services that are reasonably interchangeable and are therefore economic substitutes for one another." *Id.* at 1031. The Complaint defines the relevant market as "the wrapped Bitcoin market in the United States." Dkt. 1 at ¶ 75, 84. And it repeatedly alleges that cbBTC and wBTC are economic substitutes. Dkt. 1 at ¶ 17 (describing cbBTC as purporting "to offer similar benefits to cryptocurrency token holders that wBTC offers, namely the seamless interaction of Bitcoin on other blockchain networks"); *id.* at ¶ 18 ("cbBTC is a product that is directly competitive to wBTC"); *id.* at ¶ 47 (describing cbBTC as "its own version of wrapped Bitcoin"); *id.* at ¶ 54 ("cbBTC offers similar features to wBTC and therefore it is a competitive product to BiT Global's wBTC"). The *In re eBay Seller* court rejected the same challenge made here. "EBay asserts that Plaintiffs' market definitions are too narrow because Plaintiffs have not acknowledged interchangeable alternatives to both eBay and Paypal." 545 F. Supp. 2d at 1031. But "because Plaintiff does not claim that eBay's product alone constitutes a market, the cases eBay cites to support its argument are inapposite." *Id.* The court also cited *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997), which held that a court cannot dismiss merely because a plaintiff does not include rote magical language stating no economic substitutes exist. Rather, it can only dismiss if Plaintiff "alleges a proposed relevant market that clearly does not encompass all

interchangeable substitute products even when all factual inferences are granted in plaintiff's favor…."

As for a geographic market, given the lax pleading requirements on this issue, courts do not delve into the kind of factual issues at this stage that Coinbase is demanding. For example, in *Pac. Steel Grp. v. Commer. Metals Co.*, 600 F. Supp. 3d 1056, 1068 (N.D. Cal. 2022), even though the court thought the relevant market was defined in an "arbitrary" fashion, it rejected a challenge to it: "[t]he purpose of market definitions is not to frustrate anti-trust plaintiffs by requiring the proof of bright lines which do not exist, but is to help identify monopoly power, that is, 'the power to control prices or exclude competition.'" *Id.* at 1070 (quoting *Home Placement Serv., Inc. v. Providence J. Co.*, 682 F.2d 274, 280 (1st Cir. 1982)). It held that "the proper stage to test the Amended Complaint's proposed geographic market boundaries is summary judgment or trial." *Id.* Other courts have rejected these kinds of challenges at this stage for the same reason. *Pro Search Plus, LLC v. VFM Leonardo, Inc.*, No. SACV 12-2102-JLS (ANx), 2013 U.S. Dist. LEXIS 169856 at *11-13 (C.D. Cal. Dec. 2, 2013); *Hurst Int'l, LLC v. Sinclair Sys. Int'l, LLC*, No. CV 17-8070-VAP (ASx), 2018 U.S. Dist. LEXIS 224964 at *8-10 (C.D. Cal. May 18, 2018). Notably, the *Pro Search* court rejected an identical argument to the one made here (that BiT being outside the U.S. means the market must be global). It did so because even though the defendant there was Canada-based, the market "need not include supplier headquarter sites," and also because this was an issue for trial. *Pro Search*, 2013 U.S. Dist. LEXIS 169856 at *11-13.

As for common sense, it is hardly "common sense" that the market should be defined globally—in fact, common sense dictates otherwise. Cryptocurrency is a highly regulated market in the United States as compared to elsewhere—so much so that Coinbase has separated its U.S. exchange from an international exchange, and prohibits U.S. users from using Coinbase International. Its stated reason for doing so is the distinct

regulatory approach in the U.S. market.[7] The geographic definition is thus not "facially unsustainable"—what Coinbase would need to show to obtain a dismissal at this stage.

### C. BiT Has Plausibly Alleged Monopoly Power

Monopoly power need not be pled with specificity. *Newcal*, 513 F.3d at 1044-45. Under the Sherman Act, "[t]he offenses of monopolization, attempt to monopolize, and conspiracy to monopolize are distinct and require different proofs." *Potters Med. Ctr. v. City Hosp. Asso.*, 800 F.2d 568, 574 (6th Cir. 1986). "Entirely distinct from monopolization, § 2 of the Sherman Act may be violated by an attempt to monopolize, even though the desired end of monopoly power is not attained. Plaintiffs need only prove a specific intent to monopolize and the dangerous probability of success." *Foremost Int'l Tours, Inc. v. Qantas Airways, Ltd.*, 379 F. Supp. 88, 97 n.8 (D. Haw. 1974) (internal citations omitted).

Yet Coinbase has lumped these together as if they were the same claims with the same elements—and repeatedly urges the Court to make legal holdings as to attempted monopolization which would be clear error.

As to allegations of monopoly power, Coinbase urges the Court to dismiss the attempted monopolization claim based on a flatly incorrect reading of the law. It suggests that Plaintiff must allege that it already has monopoly power in the wrapped Bitcoin market, dkt. 33 at 13—something that makes little sense as to an **attempted** monopolization claim. But the 9th Circuit has expressly rejected this:

> Certainly market power may establish dangerous probability. However, *Lessig*, *Industrial Building Materials*, and *Moore*, *supra*, hold that dangerous probability may also be shown through proof of specific intent to set prices or exclude competition in a portion of the market without legitimate business purpose. This specific intent must be accompanied by predatory conduct directed to accomplishing the unlawful purpose. Ordinarily specific intent is difficult to prove and will be inferred from such anticompetitive conduct.

---

[7] https://www.coinbase.com/blog/introducing-coinbase-international-exchange

Therefore, evidence of market power may be relevant, but it is not indispensable where a substantial claim of restraint of trade is made.

*Hallmark Indus. v. Reynolds Metals Co.*, 489 F.2d 8, 12-13 (9th Cir. 1973).

As another court in this District held, there are three separate paths to meeting this element: "Either a dangerous probability of success must be demonstrated, by a showing of market power *or* other evidence, or the claim of an attempt to monopolize must in turn be based upon a substantial claim of restraint of trade." *Jack Winter, Inc. v. Koratron Co.*, 375 F. Supp. 1, 70 (N.D. Cal. 1974) (emphasis in original).

Coinbase next argues that the "dangerous probability of success" element of attempted monopolization has not been met. Whether the dangerous probability of success element has been met is a "particularly fact intensive inquiry" and "[c]ourts typically should not resolve this question at the pleading stage." *Momento, Inc. v. Seccion Amarilla USA*, No. C 09-1223 SBA, 2009 U.S. Dist. LEXIS 85295 at *23 (N.D. Cal. Sep. 16, 2009). Citing *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1373 (9th Cir. 1989)), a case that was resolved on **summary judgment**, Coinbase acknowledges that one way to prove a dangerous probability of success at trial is to prove "direct evidence of specific intent" to monopolize "plus proof of conduct directed toward accomplishing the unlawful goal." Dkt. 33 at 13. But **in a complaint**, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Coinbase acknowledges that the Complaint alleges such intent. Dkt. 1 at ¶ 75 ("Coinbase had the specific intent to monopolize or destroy competition in the wrapped Bitcoin market in the United States…."); *see also* ¶ 48, 146-47, 161-62. Coinbase does not even try to dispute that the latter element of conduct has been pled. Dkt. 1 at ¶ 55-58, 79, 146-47, 161-62.

This likewise disposes of the arguments Coinbase makes as "first/second" at pages 14-15 of its brief, because Coinbase argues these points solely as alternative means of satisfying the "dangerous probability of success" element. But Coinbase's arguments are invalid in any event. The argument that BiT does not plausibly allege the "upstream" market of centralized cryptocurrency exchanges in the United States fails for the same

reasons discussed above. A submarket is valid if there is "industry or public recognition of the submarket as a separate economic entity"—so Coinbase's claim not to understand what a "centralized" exchange is cannot hold water given how core the issue of centralization/decentralization is to the cryptocurrency industry. This is such a basic aspect of the industry that there is literally an Encyclopedia Brittanica entry covering the topic, complete with a chart differentiating the two.[8] Coinbase even calls itself a "centralized exchange," so it is difficult to believe it does not understand the term.[9] And as above, all this is not an issue for a 12(b)(6) motion.

As to the second argument—that BiT supposedly does not explain how monopoly power over the centralized cryptocurrency exchange market supports the "dangerous probability" element—again, this is false. BiT explains this in detail, including citing market share statistics and an academic paper relating to the issue. Dkt. 1 at ¶ 41-46, 83-88. And while BiT need not rely on the essential facility doctrine Coinbase cites—because it has adequately pled a dangerous probability of success—BiT satisfies it as well. Coinbase controls an ecosystem of users to whom BiT can no longer reasonably access—and *Aerotec Int'l, Inc.*, says this is enough to show that it is unavailable. *Aerotec Int'l, Inc.*, 836 F.3d at 1185. BiT has clearly pled this, and has explained specifically why access to competing exchanges is inadequate. Dkt. 1 at ¶ 41-46; *id.* at ¶ 83-87. **This likewise disposes of Coinbase's "refusal to deal" arguments**, because as *Aerotec* explains, it is an exception to that rule—and all elements have been pled. *Aerotec Int'l, Inc.*, 836 F.3d at 1185. Dkt. 1 at ¶ 41-46; ¶ 83-87 (elements 1, 3, 4); *id.* at ¶ 83 (element 2).

### D. BiT Has Suffered an Antitrust Injury

Coinbase argues that BiT did not plead antitrust injury to itself. But BiT pleads (1) it will suffer a reduction in market share, dkt. 1 at ¶ 9; (2) it will suffer a loss of more than $1 billion in its market valuation, *id.*; (3) and that third-party app developers will be discouraged from developing apps for wBTC, *id.* at ¶ 84. BiT further pleads specific

---

[8] https://www.britannica.com/money/centralized-vs-decentralized-crypto
[9] https://help.coinbase.com/en/coinbase/other-topics/legal-policies/what-does-coinbase-do-with-my-digital-assets

allegations about the injury: that based on a cited study, being listed on Coinbase increases trading volume by 236 percentage points, and that this also has indirect effects increasing off-exchange trading. Dkt. 1 at ¶ 46. Coinbase does not even address this. BiT also pleads that "BiT Global earns a processing fee whenever a user mints or redeems wBTC through authorized merchants." Dkt. 1 at ¶ 37. As part of its pattern of misrepresenting the Complaint to the Court, Coinbase argues that "BiT does not, for example, allege that reduced wBTC supply reduces the fees BiT earns from the minting and burning…." Dkt. 33 at 16. BiT pled exactly that: "That drop necessarily reduces Plaintiff's revenue because there are fewer users of the product." Dkt. 1 at ¶ 150.

BiT pleads based on specific data (including a chart) that it suffered a 5% drop in wBTC supply in the two weeks after the delisting announcement, and gave exact numbers for the drop. Dkt. 1 at ¶ 60-61. Coinbase proffers the alternate explanation that wBTC's price dropped (and the volume of wBTC minted dropped) because of "association with Mr. Sun." But that ignores the legal standard: when faced with alternative explanations, the Court does not need to believe Plaintiff's version is true, or even that it is probable. *Starr*, 652 F.3d at 1216-17. Courts often consider temporal proximity between events enough to show plausibility of causation. *See, e.g., Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002); *Azzolini v. Corts Tr. II for Provident Fin. Tr. I (In re UNUMProvident Corp. Sec. Litig.)*, 396 F. Supp. 2d 858, 898 (E.D. Tenn. 2005). It is certainly not implausible that the drop described at ¶ 60-61 in the days after Coinbase's delisting announcement was, in fact, caused by it. Coinbase's explanation (which was hardly explained at all) is not "so convincing" that it renders Plaintiff's version of events implausible, *Starr*, 652 F.3d at 1216-17. And BiT has pled that this injury will increase as Coinbase "consolidates its market share via this anticompetitive conduct…." Dkt. 1 at ¶ 78. As for reputational harm, which was clearly pled, Coinbase refers the Court to its arguments in other sections, and BiT does likewise.

### E. BiT's Lanham Act Claim is Properly Plead

Binding authority establishes that "the Lanham Act encompasses more than blatant

falsehoods. It embraces innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlying an advertisement." *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 257-58 (9th Cir. 1995) (quoting *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 277 (2d Cir. 1981)). The Lanham Act applies even if there is "no literally false statement." *Id.* Coinbase not only ignores this authority, but misrepresents the law to the Court, arguing that Plaintiff "must allege" a "false statement of fact." Dkt. 33 at 16. This is not the law: allegations of false implications are more than enough to survive a motion to dismiss, and can do so even if the statement itself was literally true. *See Simpson Strong-Tie Co. v. Mitek Inc.*, No. 20-cv-06957-VKD, 2021 U.S. Dist. LEXIS 66024 at *6-8 (N.D. Cal. Apr. 5, 2021); *Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1064-65 (S.D. Cal. 2021).

The Complaint alleges in detail that the false implications are: (1) "that Coinbase had performed a rigorous analysis of a listing standard which it did not actually do," dkt. 1 at ¶ 97, (2) "that wBTC is unsafe or risky such that it would not meet neutral, unbiased listing standards," *id.* at ¶ 101, (3) "that wBTC was unreliable or unsafe to invest in or transact business in," *id.* at ¶ 97, and (4) "there is some unknown negative information in Coinbase's possession that it knew meant wBTC was risky to use or own," *id.* at ¶ 101.

Coinbase cites *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-00106-LRH-PAL, 2010 U.S. Dist. LEXIS 116249 at *8 (D. Nev. Oct. 29, 2010), which was based on that court's belief that statements about **future** financial condition were "predictions of the future" which "could not be proven true or false at the time the statements were made." But **none** of the alleged implications here involve predictions of the future. Furthermore, numerous courts have considered this same issue, and the vast majority have concluded that predictions of future business difficulties are, in fact, actionable under the Lanham Act. *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 393 F. Supp. 3d 968, 988-89 (E.D. Cal. 2019) (collecting cases). The *Deerpoint* court itself distinguished *Oracle* as inapplicable in cases where the complaint "is alleged in current terms." The only other case Coinbase cites, oddly, is *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir.

1999)—a case which rejects Coinbase's own argument and holds that the "implication" that a business was not paying bills "in timely fashion" was "clearly one of fact" capable of being proven true or false and thus actionable under the Lanham Act.

Coinbase's suggestion that these implications are implausible fails because even on summary judgment, courts are reluctant to usurp the jury's role of deciding whether implications were reasonable. *Delta T LLC v. MacroAir Techs., Inc.*, No. EDCV 20-1489-GW-JPRx, 2022 U.S. Dist. LEXIS 210985 at *11 (C.D. Cal. Nov. 18, 2022) ("That is not something that the Court feels comfortable resolving as a matter of law. It is for a jury to decide what are the 'most reasonable' interpretations."); *Cisco Sys. v. Beccela's Etc., LLC*, 403 F. Supp. 3d 813, 827 (N.D. Cal. 2019) (whether statements are "literally false or would mislead a reasonable consumer is a question of fact not suitable for resolution on a motion to dismiss" and "[t]he 'full context' of the misrepresentations cannot be assessed without additional facts that will come to light during discovery").

Materiality is satisfied if the statement is likely to influence the purchasing decision of the advertisement's audience. *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, No. 16-cv-3059-BTM-AGS, 2017 U.S. Dist. LEXIS 171757 at *9-10 (S.D. Cal. Oct. 16, 2017). Materiality is typically proven through consumer surveys in Lanham Act cases. *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110-11 (9th Cir. 2012). Courts thus routinely defer materiality decisions to summary judgment. *Bobbleheads.com, Ltd. Liab. Co. v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1099 (S.D. Cal. 2017) ("Defendants will have an opportunity to attack the materiality of these statements at a later phase of the case—but not now."); *Beyond Blond Prods., LLC v. Heldman*, No. CV 20-5581 DSF (GJSx), 2022 U.S. Dist. LEXIS 104374 at *14 (C.D. Cal. Mar. 3, 2022). Coinbase again makes false statements to the Court, with a partial quote omitting the latter half of paragraph 102 to falsely claim Plaintiff pled "only the element itself." Compare dkt. 33 at 17-18 to dkt. 1 ¶ 102. This is an egregious omission, as the Complaint alleges in detail that consumers were influenced by and acted on Coinbase's statements. Dkt. 1 at ¶ 61, 97-98, 102, 139.

As for Coinbase's argument that injury has not been pled, the Complaint both pleads

and explains the injury. Dkt. 1 at ¶ 104. The Lanham Act has a low injury standard: "Because a likely injury is far less certain than an actual injury, plaintiffs need not prove the latter to establish the commercial injury necessary for Lanham Act standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011). There also is a presumption of injury "when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers." *Id.* It is enough to plead, "general factual allegations of injury." *Spice Jazz LLC v. Youngevity Int'l, Inc.*, No. 19-cv-0583-BAS-DEB, 2020 U.S. Dist. LEXIS 209343 at *10-11 (S.D. Cal. Nov. 9, 2020).

### F. BiT's UCL Claim is Properly Pled

#### 1. BiT has UCL Standing

At the outset, Coinbase briefly refers the Court to its antitrust injury section to claim there was no UCL injury—which fails for the same reasons as above. Coinbase falsely tells the Court that the Complaint only seeks public injunctive relief on the UCL claims. Dkt. 33 at 18-19. But the Complaint also seeks restitution. Dkt. 1 at ¶ 124, 141. This is not a standing issue, because the UCL permits both private **and** public injunctive relief. This issue ordinarily arises in motions to compel arbitration, and courts do not dismiss claims for private UCL injunctive relief—they compel them to arbitration. *See Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 251 Cal. Rptr. 3d 269 (2019). Here, the only practical effect is it is **one of multiple ways** in which BiT can also seek attorney's fees under California Code of Civil Procedure § 1021.5. It is procedurally improper to seek dismissal of a § 1021.5 request at this stage. *Keith Feder, M.D., Inc. v. Aetna Life Ins. Co.*, No. 2:23-cv-07026-JLS-JPR, 2024 U.S. Dist. LEXIS 129547 at *18-19 (C.D. Cal. June 25, 2024). It is also substantively incorrect, as Coinbase knows—because it recently lost on this same issue. *Kramer v. Coinbase, Inc.*, 105 Cal. App. 5th 741, 748-53, 326 Cal. Rptr. 3d 217 (2024); *see also* dkt. 1 at ¶ 116, 123-24, 139-40 (pleading general harm to public). And dismissal would further be improper because § 1021.5 also applies if there is a benefit to "a large class of persons." The proper procedural vehicle to enable the Court to decide any of this is a response after a motion under § 1021.5 has been filed.

### 2. BiT's UCL Unfair Prong Claim is Properly Pled

Citing the test from *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999), Coinbase argues that it has not been met. But it glosses over the last portion of the test, which BiT's allegations plausibly allege. In *LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*, No. 18-cv-02573-YGR, 2019 U.S. Dist. LEXIS 5061 at *44-46 (N.D. Cal. Jan. 10, 2019), the court emphasized that the *Cel-Tech* test is broader than the antitrust statutes because of the language "or otherwise significantly threatens or harms competition." It ruled that general pleadings about unfair competition sufficed to satisfy this part of the *Cel-Tech* test. *Id.* BiT has gone far beyond what *LegalForce* approved. Dkt. 1 at ¶ 79. And other courts have made clear that conduct which does not violate the Sherman Act may support a UCL unfairness claim. *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1090-91 (N.D. Cal. 2019). Here, as in *Diva Limousine*, plaintiff pled in detail that other laws and policies were being violated. *See, e.g.*, Dkt. 1 at ¶ 110-118 (policies); ¶ 127-28 (explaining as to UCL).

Coinbase again attempts to address its conduct piecemeal, rather than as a whole. But as explained *supra*, this is improper, and the *Aspen* exception to the ability to refuse to deal has been pled. Finally, Coinbase argues that the "balancing test" should not apply, and would not be met because BiT has not pled harm to consumers. But BiT has, in fact, pled such harm specifically to consumers. Dkt. 1 at ¶ 132, 139.

### 3. BiT's UCL Unlawful Prong Claim is Properly Pled

As to the Lanham Act and Sherman Act "borrowed law" claims, Coinbase does not dispute that the UCL unlawful prong claim survives as to those statutes if the other claims do. As to the FTC Act, Coinbase argues that its standards are "nearly identical" to the UCL unfairness prong, such that the prongs are effectively one and the same. Dkt. 33 at 20. It cites *Cel-Tech* for this proposition—**a case which expressly holds the exact opposite of this**. In a footnote to the section Coinbase cites, the California Supreme Court stated: "Nothing we say relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law such as 'fraudulent' or 'unlawful'

business practices or 'unfair, deceptive, untrue or misleading advertising.'" *Cel-Tech*, 20 Cal. 4th 187 n.12. Another court in this District rejected *Cel-Tech*'s application to the "unlawful" prong based on this footnote, even in a case involving unfair competition between competitors. *LegalForce*, 2019 U.S. Dist. LEXIS 5061 at *44-46.

Coinbase next argues that the UCL cannot apply to the FTC Act because the **federal** government did not create a private cause of action. While the FTC Act does not provide for a private right of action, it does not expressly prohibit one, either. That is dispositive of this issue because of the California Supreme Court's repeated holding that "to bar a UCL action, another statute must absolutely preclude private causes of action or clearly permit the defendant's conduct." *Zhang v. Superior Court*, 57 Cal. 4th 364, 379-80, 159 Cal. Rptr. 3d 672, 304 P.3d 163 (2013); *see also LegalForce*, 2019 U.S. Dist. LEXIS 5061 at *36-37 (explaining law and holding same). While Congress could have preempted a law like the UCL, it chose to do the opposite by including an anti-preemption provision. 15 U.S.C. § 57b(e). That is why other courts have rejected this same argument. *Consumer Justice Ctr. v. Olympian Labs, Inc.*, 99 Cal. App. 4th 1056, 1059-62, 121 Cal. Rptr. 2d 749 (2002) (conducting preemption analysis of FTC Act as to UCL); *Rubenstein v. Neiman Marcus Grp. Ltd. Liab. Co.*, 687 F. App'x 564, 567 (9th Cir. 2017) (unpublished); *Kindred Studio Illustration & Design, LLC v. Elec. Commun. Tech., LLC*, No. CV 18-7661-GW(GJSx), 2018 U.S. Dist. LEXIS 223304 at *17-18 (C.D. Cal. Dec. 3, 2018); *Inga v. Bellacor*, No. 2:19-cv-10406-MWF-MRW, 2020 U.S. Dist. LEXIS 188297 at *7-8 (C.D. Cal. July 17, 2020); *Schmitt v. SN Servicing Corp.*, No. 21-cv-03355-WHO, 2021 U.S. Dist. LEXIS 219292 at *14-15 (N.D. Cal. Nov. 12, 2021).

Citing only to cases from 1948, 1980, and 1984, Coinbase argues that the scope of the FTC Act is "materially identical" to the UCL and limited in scope. But on November 22, 2022, the FTC issued a Policy Statement which interpreted the FTC Act. Ex. A. The FTC's determinations about the meaning of the FTC Act "are entitled to great weight." *FTC v. Texaco*, 393 U.S. 223, 226 (1968). That Policy Statement expressly interpreted the Act to be broader in scope: "Congress's aim was to create a new prohibition broader than,

and different from, the Sherman and Clayton Acts." Ex. A at 3. The Complaint explains in detail why the FTC Act was violated, particularly given the determinations in this Policy Statement. Dkt. 1 at ¶ 110-118. None of those paragraphs were addressed, and Coinbase should not be able to do so on reply.

As for Coinbase's claims that it can introduce a product and can refuse to do business with BiT, those are addressed generally above. But as to the FTC Act specifically, the only authority Coinbase cites is from 1921, 1980 and 1984. Dkt. 33 at 22. The 2022 Policy Statement interpreted the FTC Act to bar "using market power in one market to gain a competitive advantage in an adjacent market' and "discriminatory refusals to deal which tend to create or maintain market power." Ex. A at 16. The Complaint alleges and explains why these aspects of the FTC Act are violated. Dkt. 1 at ¶ 117-18.

### 4. BiT's UCL Fraudulent Prong Claim is Properly Pled

The UCL fraudulent prong is much broader than common law fraud, and focuses on the defendant's conduct. *Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.*, 19 Cal. App. 5th 258, 271, 227 Cal. Rptr. 3d 862 (2018). It does not require the elements of actual falsity, knowledge of falsity, or reliance. *Id.* It requires only that the statement be likely to mislead—an issue that is a question of fact. *Id.* at 272. Plaintiff' UCL fraudulent prong claim has two aspects: misrepresentations and omissions. As to whether members of the public were likely to be deceived, this was pled in detail in the Third Cause of Action, dkt. 1 at ¶ 101-102, and incorporated by reference into the UCL claim, *id.* at ¶ 133-35. BiT explained this in detail, *id.* at ¶ 92-104, *i.e.*, that the public was misled into thinking Coinbase conducted a rigorous analysis under a listing standard, that it possessed undisclosed nonpublic facts, or that wBTC was not a safe or reliable product. Coinbase offers no explanation of its argument other than to falsely claim nothing was pled.

As to fraud by omission, "a fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim." *Falk v. GMC*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007). While Coinbase argues that BiT did not plead a duty to disclose, again, this was pled in detail. Dkt. 1 at ¶ 137. Coinbase responds with adjectives, not

1    argument ("conclusory," "circular," "irrelevant"). But repetition of adjectives in a motion
2    to dismiss is not a legal basis for dismissal. Coinbase argues that pleading that it has a
3    fiduciary duty to members of the public trading on its exchange is "conclusory." But BiT
4    need only plead facts, not law. *See Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023
5    (7th Cir. 2018). Cryptocurrency held by Coinbase meets the legal requirements for a
6    special deposit. *Goldblatt v. FDIC*, 105 F.3d 1325, 1328 (9th Cir. 1997); *Van de Kamp v.*
7    *Bank of Am.*, 204 Cal. App. 3d 819, 858, 251 Cal. Rptr. 530 (1988). This creates a fiduciary
8    duty—and thus a duty not to omit material facts. *Rose v. J.P. Morgan Chase*, *N.A.*, 2012
9    U.S. Dist. LEXIS 108559 at *6 (E.D. Cal. Aug. 2, 2012). Coinbase completely ignores the
10   pleading that it had "exclusive knowledge of the reasons why it delisted wBTC and what
11   'standards' it was applying in its review," dkt. 1 at ¶ 137. This alone resolves this issue,
12   because this exclusive knowledge creates a duty as well. *See Corson v. Toyota Motor*
13   *Sales, U.S.A., Inc.*, No. 2:12-cv-08499-JGB-VBK, 2013 U.S. Dist. LEXIS 189262 at *11-
14   13 (C.D. Cal. July 18, 2013). A partial representation—also pled, dkt. 1 at ¶ 137, and also
15   ignored by Coinbase—would likewise create the same duty.

### G. BiT's Interference Claims Are Properly Pled or Can Be Amended

16
17       Coinbase first argues BiT has suffered no economic harm—citing only to the
18   antitrust injury section of its brief. But antitrust injury is a specific kind of injury and its
19   standards are inapplicable to any other claims. "At the pleading stage, general factual
20   allegations of injury resulting from the defendant's conduct may suffice…." *Lujan v. Defs.*
21   *of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130 (1992), *see* dkt. 1 at ¶ 9, 37, 46, 84.

22       Second, Coinbase argues that BiT must specify third parties with whom prospective
23   relationships were interfered with. Courts that have dismissed on this basis have granted
24   leave to amend based on the 9th Circuit's policy of "extreme liberality" in granting leave.
25   BiT should likewise be given leave to amend its pleadings on this issue. *ARF*
26   *Dashnaktsutyun, W. U.S.A. v. Armenian Revolutionary Fed'n WUSA, Inc.*, No. 2:21-cv-
27   05594-FWS (RAOx), 2023 U.S. Dist. LEXIS 92895 at *34 (C.D. Cal. May 26, 2023).

28       Coinbase's third argument is to urge the Court to dismiss based on *Marin Tug &*

---

1   *Barge, Inc. v. Westport Petrol., Inc.*, 271 F.3d 825, 831 (9th Cir. 2001)—but *Marin Tug*
2   has since been limited. *See Cappello Glob., Ltd. Liab. Co. v. Temsa Ulaşim Araçlari*
3   *Sanayi Ve Ticaret A.Ş.*, No. 2:19-cv-10710-MEMF-KS, 2024 U.S. Dist. LEXIS 187474 at
4   *50-52 (C.D. Cal. Oct. 15, 2024) (describing history of *Marin Tug* and applying the lesser
5   "wrongful motive" standard). And even under *Marin Tug*, the claim survives if **any** of
6   Plaintiff's other statutory-based claims do, because the conduct at issue is unlawful.

7          Fourth, Coinbase argues that as to negligent interference, it does not owe a duty of
8   care. But under the law, this simply loops back into the third argument: "among the criteria
9   for establishing a duty of care is the 'blameworthiness' of the defendant's conduct." *Lange*
10  *v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1187, 81 Cal. Rptr. 2d 39 (1998). And if the
11  conduct is unlawful, it is blameworthy—and thus there is a duty. *Id.* Further, in California,
12  everyone owes a duty to prevent others from being injured by their conduct. *Pro-Com*
13  *Prods., Inc. v. Optimal Sante, LLC*, No. 2:20-cv-08369-FLA (Ex), 2023 U.S. Dist. LEXIS
14  194592 at *7-8 (C.D. Cal. Oct. 30, 2023). The other factors considered in *Pro-Com* would
15  all likewise be met here (*i.e.*, Coinbase could foresee the harm to BiT).

## H. BiT's Trade Libel Claim is Properly Pled

17          As to Coinbase's first, second, and fourth arguments, trade libel covers
18  **implications**—even if they are implied by an expression of opinion. "[W]here an
19  expression of opinion implies a false assertion of fact, the opinion can constitute actionable
20  defamation." *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 155-56, 162 Cal.
21  Rptr. 3d 831 (2013). If a statement is "susceptible of both an innocent and a libelous
22  meaning," then "the jury must decide how the statement was understood." *Franklin v.*
23  *Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385, 10 Cal. Rptr. 3d 429 (2004). A
24  statement based on implied facts that "gives rise to the inference that there are undisclosed
25  facts that justify the forming of the opinion" is actionable—whereas a statement that
26  "appears to disclose all the facts on which it is based" is only actionable if the facts
27  disclosed as its basis are false. *Standing Comm. on Discipline of the United States Dist.*
28  *Court v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995). Even if Coinbase's statement that

wBTC failed its listing standards was true, and even if it is an opinion, BiT's allegations fall squarely within this rule. Coinbase flatly misstates the law to the Court, claiming in its fourth argument that implications are not actionable, dkt. 33 at 25. A reading of the cases Coinbase cites shows that this argument originates from *Auvil v. CBS "60 Minutes"*, 67 F.3d 816 (9th Cir. 1995)—a case applying the law of the state of Washington, which also does not even say that an implication cannot be actionable.

As for special damages, "disparagement of the goods of a business[person] may be made in such a manner as to imply business dishonesty" and thus be libel *per se*—which does not require pleading special damages. *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964). This has specifically been applied not just to people, but businesses, where the trade libel calls into question "the integrity or honesty of a business." *Johnstech Int'l Corp. v. Jf Microtechnology SDN BHD*, No. 14-cv-02864-JD, 2016 U.S. Dist. LEXIS 104380 at *10-11 (N.D. Cal. Aug. 8, 2016). "It is possible to commit libel per se in the course of business competition." *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 385, 226 Cal. Rptr. 354 (1986). This includes if the statements "impute" to the business "fraud, dishonesty or questionable business methods." *Id.* BiT has alleged, at a minimum, the imputation of questionable business methods by Coinbase. Dkt. 1 at ¶ 101-101, 104 ("the implication that its product warranted delisting for reasons that relate to its trustworthiness"). If the Court disagrees, leave to amend should be permitted (1) to further plead special damages, or (2) to plead that Coinbase has made additional public statements making clear that it is impugning BiT's honesty and integrity.

## IV.    AMENDMENT SHOULD BE PERMITTED IF NEEDED

Absent undue delay or repeated failures to cure deficiencies with prior amendments, leave to amend should be "freely given." *Galindo v. Financo Fin., Inc.*, No. C 07-03991 WHA, 2008 U.S. Dist. LEXIS 102875 at *4-5 (N.D. Cal. Dec. 9, 2008). This case involves complex legal claims, and the bulk of Coinbase's motion focuses on arguments that certain facts were not plead. If the Court agrees with Coinbase on any issue, BiT should be given an opportunity to plead additional facts.

1  DATED: February 18, 2025

**KNEUPPER & COVEY, PC**

2

/s/Kevin M. Kneupper

3

Kevin M. Kneupper, Esq.

4

*Attorney for Plaintiff BiT Global*
*Digital Limited*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28