WILMER CUTLER PICKERING
 HALE AND DORR LLP

SONAL N. MEHTA (SBN 222086)
 Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
 David.Gringer@wilmerhale.com
PAUL VANDERSLICE (*pro hac vice*)
 Paul.Vanderslice@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

*Attorneys for Defendant Coinbase Global, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BIT GLOBAL DIGITAL LIMITED,<br><br>                    Plaintiff,<br><br>        v.<br><br>COINBASE GLOBAL, INC.,<br><br>                    Defendant. | Case No. 3:24-cv-09019-AMO<br><br>**DEFENDANT COINBASE GLOBAL, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS [DKT. 33]**<br><br>Hearing Date: May 15, 2025<br>Time: 2:00 p.m.<br>Judge: Hon. Araceli Martínez-Olguín |

## **TABLE OF CONTENTS**

I.     BiT's Sherman Act Claims Fail ..................................................................2

       A.     BiT's Opposition Confirms No Plausibly Alleged Exclusionary Conduct ............2

       B.     BiT Does Not Plead Causal Antitrust Injury .........................................6

       C.     BiT Does Not Adequately Allege A Product Or Geographic Market ...................7

       D.     BiT Does Not Allege Monopoly Power Or Dangerous Probability Of
              Obtaining Monopoly Power...........................................................8

II.    BiT's Lanham Act Claim Fails ..................................................................10

III.   BiT's California Unfair Competition Law Claims Fail...........................................11

IV.    BiT's Tortious Interference Claims Fail ......................................................14

V.     BiT's Trade Libel Claim Fails................................................................15

CONCLUSION..........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerotec International, Inc. v. Honeywell International, Inc.*,
836 F.3d 1171 (9th Cir. 2016) ....................................................................................9

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
948 F.2d 536 (9th Cir. 1991) .....................................................................................9

*American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal
& Professional Publications, Inc.*, 108 F.3d 1147 (9th Cir. 1997)............................5

*Arista Networks, Inc. v. Cisco System*,
2018 WL 11230167 (N.D. Cal. May 9, 2018) ..........................................................5

*Auvil v. CBS '60 Minutes'*,
67 F.3d 816 (9th Cir. 1995) .....................................................................................15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................8

*Beyond Blond Productions, LLC v. Heldman*,
2022 WL 2036306 (C.D. Cal. Mar. 3, 2022) ..........................................................10

*BMA LLC v. HDR Global Trading Ltd.*,
2021 WL 4061698 (N.D. Cal. Sept. 7, 2021) ..........................................................12

*Bobbleheads.com, LLC v. Wright Brothers, Inc.*,
259 F. Supp. 3d 1087 (S.D. Cal. 2017)..............................................................10, 11

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962)....................................................................................................7

*Caccuri v. Sony Interactive Entertainment, LLC*,
2023 WL 1805137 (N.D. Cal. Feb. 7, 2024) ............................................................3

*Cappello Global, LLC v. Temsa Ulasim Araclari Sanayi Ve Ticaret A.S.*,
2024 WL 4494673 (C.D. Cal. Oct. 15, 2024), *amended and superseded by*
2024 WL 5330030 (C.D. Cal. Dec. 19, 2024) ........................................................14

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal. 4th 163 (1999) .............................................................................................12

*Coastal Abstract Service, Inc. v. First American Title Insurance Co.*,
173 F.3d 725 (9th Cir. 1999) ...................................................................................10

*Cordon v. Wachovia Mortgage*,
776 F. Supp. 2d 1029 (N.D. Cal. 2011) ..................................................................11

*In re DRAM Antitrust Litigation*,
   536 F. Supp. 2d 1129 (N.D. Cal. 2008) ........................................................................5

*Emulex Corp. v. Broadcom Corp.*,
   2010 WL 11595718 (C.D. Cal. June 7, 2010) ...........................................................6

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.*,
   12 F. Supp. 2d 1068 (C.D. Cal. 1998) ......................................................................15

*FTC v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ...............................................................................3, 4

*FTC v. Wellness Support Network, Inc.*,
   2011 WL 4026867 (N.D. Cal. Sept. 12, 2011) .........................................................13

*Gamboa v. Apple Inc.*,
   2025 WL 660190 (N.D. Cal. Feb. 28, 2025) ...........................................................8, 9

*Genus Lifesciences Inc. v. Lannett Co.*,
   378 F. Supp. 3d 823 (N.D. Cal. 2019) ........................................................................6

*Goldblatt v. FDIC*,
   105 F.3d 1325 (9th Cir. 1997) ................................................................................13

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ..................................................................................13

*Key v. Qualcomm Inc.*,
   2025 WL 597604 (9th Cir. Feb. 25, 2025) .............................................................14

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ...........................................................................................11

*Lange v. TIG Insurance Co.*,
   68 Cal. App. 4th 1179 (1998) .................................................................................15

*LiveUniverse, Inc. v. MySpace, Inc.*,
   304 F. App'x 554 (9th Cir. 2008) ...............................................................................3

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*,
   271 F.3d 825 (9th Cir. 2001) ..................................................................................14

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) .............................................................................................11

*Newcal Industries, Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ...................................................................................7

*O'Donnell v. Bank of America, N.A.*,
   504 F. App'x 566 (9th Cir. 2013) ...........................................................................12

*Oracle USA, Inc. v. Rimini Street, Inc.*,
    2010 WL 4386957 (D. Nev. Oct. 29, 2010) .......................................................................10

*Piping Rock Partners Inc. v. David Lerner Associates*,
    946 F. Supp. 2d 957 (N.D. Cal. 2013) ..............................................................................15

*Quick Dispense, Inc. v. Vitality Foodservice, Inc.*,
    2024 WL 2925589 (C.D. Cal. June 4, 2024) .....................................................................13

*Rebel Oil Co. v. Atlantic Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ..........................................................................................7, 9

*Reveal Chat Holdco LLC v. Facebook, Inc.*,
    2021 WL 1615349 (N.D. Cal. Apr. 26, 2021) .....................................................................6

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
    471 F. Supp. 3d 981 (N.D. Cal. 2020) .............................................................................4, 7

*Rosenberg v. J.C. Penny Co.*,
    30 Cal. App. 2d 609 (1939) ..............................................................................................15

*Rubenstein v. Neiman Marcus Group LLC*,
    687 Fed. App'x 564 (9th Cir. 2017) ..................................................................................12

*Sabol v. PayPal Holdings, Inc.*,
    2024 WL 3924686 (N.D. Cal. Aug. 23, 2024) ...................................................................6

*SC Innovations, Inc. v. Uber Techsnologies, Inc.*,
    434 F. Supp. 3d 782 (N.D. Cal. 2020) ...............................................................................8

*In re Sequoia Benefits & Insurance Data Breach Litigation*,
    2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) ..................................................................12

*Suzie's Brewery Co. v. Anheuser-Busch Cos.*,
    519 F. Supp. 3d 839 (D. Or. 2021) ...................................................................................11

*Tele Atlas N.V. v. NAVTEQ Corp.*,
    2008 WL 4911230 (N.D. Cal. Nov. 13, 2008) ...................................................................2

*Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*,
    875 F.2d 1369 (9th Cir. 1989) ............................................................................................8

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) .............................................................................8

*TransFresh Corp. v. Ganzerla & Associate, Inc.*,
    862 F. Supp. 2d 1009 (N.D. Cal. 2012) ...........................................................................11

*Tundra, Inc. v. Faire Wholesale, Inc.*,
    2024 WL 589097 (N.D. Cal. Feb. 13, 2024) ......................................................................9

*Van de Kamp v. Bank of America*,
204 Cal. App. 3d 819 (1988) ...................................................................................13

*Varlack v. Ohio Security Insurance Co.*,
2023 WL 2012836 (N.D. Cal. Feb. 15, 2023) .........................................................14

*Verizon Commcunications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004)..........................................................................................2, 3, 9

*Vinci v. Waste Management, Inc.*,
1994 WL 478163 (N.D. Cal. Aug. 25, 1994) ...........................................................8

*Zhang v. Superior Court*,
57 Cal. 4th 364 (2013) ...........................................................................................11

**Docketed Cases**

*SEC v. Coinbase, Inc.*,
No. 23-cv-4738 (S.D.N.Y. 2025)..............................................................................1

*SEC v. Sun*,
No. 23-cv-2433 (S.D.N.Y. 2025)..............................................................................1

**Other Authorities**

@BiTGlobalTrust, X (Nov. 20, 2024 11:00 AM),
https://x.com/BiTGlobalTrust/status/1859265686012596275 ...................................6

Coinbase demonstrated in its motion the absence of plausible allegations that it violated the law. Unable to overcome that showing, BiT instead resorts to distraction. BiT repeatedly and wrongly characterizes Coinbase's accurate representations of the Complaint and relevant law as "false statements." It is BiT that has misunderstood and misapplied the law, introducing revisionist explanations rather than defending its claims as alleged. BiT also riddles its opposition with irrelevant sideshows, principally drawing a false equivalence between the SEC's now-dropped dispute with Coinbase over whether digital assets are securities, and fraud/manipulation charges brought by the SEC (and made by others, including investigative journalists) against Justin Sun.[1] The suggestion that the SEC's dismissed case somehow means that Coinbase cannot act to protect its users from the risks posed by an accused fraudster only underscores the legitimate reasons that Coinbase delisted wBTC and the frailty of BiT's claims seeking to challenge that decision. And BiT cannot erase those reasons by arguing that Coinbase's motion improperly invokes evidence outside the pleadings. The Court is not required to accept allegations (or unpled attorney argument) that ignore reality; it can—and should—take judicial notice of allegations about Sun that gave rise to Coinbase's concerns. *See* Mot. 4 n.4.

Where it engages with the substance of the motion, BiT attempts to dismiss Coinbase's motion as suggesting a "plausible alternative explanation" for the delisting decision. Opp. 2. Even setting aside that Coinbase's explanation for the delisting decision reflects reality and BiT's allegations do not, BiT has failed to meet even basic pleading requirements because the problem with BiT's claims is much deeper than how plausible or implausible BiT's alleged explanation is. Fundamentally, the antitrust (and related) laws do not recognize BiT's theory of forced dealing between rivals. That dooms its claims now and simply cannot be fixed through amendment.

As to its antitrust claims, BiT abandons its monopolization theory, advancing only an "attempt" theory. There, BiT's opposition sidesteps the defects identified in Coinbase's motion, each of which is independently fatal to its Complaint: that BiT's own allegations establish that BiT

---

[1] *See* Joint Stipulation to Dismiss, *SEC v. Coinbase, Inc.*, No. 23-cv-4738 (S.D.N.Y. Feb. 28, 2025), Dkt. 178. The SEC and Justin Sun have been granted a stay pending the "explor[ation] [of] a potential resolution." *See* Order Granting Joint Letter Mot. to Stay, *SEC v. Sun*, No. 23-cv-2433 (S.D.N.Y. Feb. 27, 2025), Dkt. 83. The potential resolution of the SEC case appears separate from the reported criminal investigation into Sun. *See* Dkt. 33-2.

(not Coinbase) and wBTC (not cbBTC) are the dominant players in the wrapped Bitcoin market, that BiT has not even alleged that Coinbase's delisting decision had a cognizable impact on wBTC's trading volume (as opposed to the overall market reaction to BiT's decision to partner with Sun), that, in any event, wBTC's circulation declined by only 5%, and that wBTC customers are free to continue to trade in wBTC on dozens of other platforms in the US and abroad, just as they did for over 99% of such trades prior to the delisting announcement. *See* Dkt. 25-18 ¶40. The opposition confirms the absence of multiple blackletter basics of any antitrust claim: an asserted market in which Coinbase exercises market power, that Coinbase engaged in exclusionary conduct, or any cognizable antitrust injury. BiT's remaining claims fare no better. The Lanham Act claim fails because BiT alleges only nonactionable statements that did not injure BiT. The UCL claims fail because BiT lacks standing and has not stated a claim under the UCL. BiT's concession that it failed to allege third parties with whom it has economic relationships similarly dooms its tortious interference claims. And the weakness of BiT's trade libel claim is demonstrated by its halfhearted request for an opportunity to amend its concededly insufficient allegations.

The Court should grant Coinbase's motion. And because BiT offers no amendment that would cure the defects in its claims, the Court should dismiss with prejudice.

## I.    BiT's Sherman Act Claims Fail

### A.    BiT's Opposition Confirms No Plausibly Alleged Exclusionary Conduct

BiT concedes that Coinbase's introduction of cbBTC was not itself exclusionary (Opp. 4) and that it is proceeding under only refusal to deal and "disparagement" theories. Cases proceed to discovery under those theories only under exceedingly narrow circumstances not present here.

#### 1.    BiT Fails To Plead A Refusal To Deal Claim

BiT acknowledges the "general ability of a company to refuse to deal with competitors." Opp. 4. Courts approach such claims with caution, to avoid "chill[ing] the very conduct the antitrust laws are designed to protect." *Tele Atlas N.V. v. NAVTEQ Corp.*, 2008 WL 4911230, at *2 (N.D. Cal. Nov. 13, 2008) (citing *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 414 (2004)).[2] BiT's attempt to evade *Trinko* falls flat, as it fails to satisfy even one

---

[2] Emphasis added and internal citations/quotations omitted throughout, unless otherwise noted.

prong of the rigorous three-part test that it seeks to invoke. *See FTC v. Qualcomm Inc.*, 969 F.3d 974, 993-94 (9th Cir. 2020) (summarizing narrow three-prong exception to state a refusal to deal claim).

**_BiT Does Not Allege Profitable Course of Dealing and Short-Term Losses_**: On the first prong, BiT never alleges that listing wBTC was profitable for Coinbase. That dooms BiT's claims because a profitable relationship cannot be assumed just because the parties had a prior business relationship. *See Trinko*, 540 U.S. at 408-09. BiT's argument that it is sufficient to show the "process by which profits are made," is dubious, but offers little assistance since BiT doesn't allege any facts to show that process either. And while BiT may be right that it need not "actually quantify[]" Coinbase's profits (Opp. 4), it must "provide enough detail to support the conclusion that [Coinbase's] conduct was … profitable." *Caccuri v. Sony Interactive Ent., LLC*, 2023 WL 1805137, at *1 (N.D. Cal. Feb. 7, 2024). BiT never does. This failure alone dooms BiT's refusal to deal claim.

BiT fares no better in arguing that it has adequately alleged that "the only conceivable rationale or purpose" of delisting wBTC was "to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition." *Qualcomm*, 969 F.3d at 994. BiT wrongly focuses on the purported unprofitability of *launching cbBTC*. Opp. 5-6. But the economics of launching cbBTC say nothing about whether Coinbase is sacrificing anything by delisting wBTC. Thus, BiT's refusal to deal claim falls short here too. Even if the Court were inclined to consider cbBTC's profitability in its analysis (and it should not), BiT's allegation that Coinbase is taking short-term losses from cbBTC (Opp. 5, Compl. ¶52) is entirely speculative. BiT therefore fails to satisfy the first two prongs of a valid refusal to deal claim.

Likely aware that it cannot, BiT next argues that it is not required to satisfy this prong at all, or that courts are forbidden from deciding it on a motion to dismiss. Opp. 5. The Ninth Circuit disagrees. *See Qualcomm*, 969 F.3d at 994 (plaintiffs must show that the defendant "sacrifice[d] short-term benefits in order to obtain higher profits in the long run from the exclusion of competition"); *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008) (plaintiff "failed to allege that [defendant's] conduct was contrary to its short-term business

interests"); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 1001-02 (N.D. Cal. 2020) (evaluating second prong in granting motion to dismiss). BiT's argument to the contrary conflates a defendant's "legitimate business justification defense" and the irrational profit sacrifice analysis. These are not the same thing and the latter is a much higher bar for plaintiffs on a motion to dismiss. *See* Opp. 5 (citing *Caccuri*, 2023 WL 1805137, at *2 (noting that defendant's "motion identifies other potential rationales behind its conduct" which "presents an affirmative defense and a question of fact, both of which are better left for a later stage of litigation")); *Simon & Simon, PC v. Align Tech., Inc.*, 533 F. Supp. 3d 904, 914 (N.D. Cal. 2021) (ruling that defendant's "patent justification" "raises an issue for summary judgment or trial, not for a motion to dismiss"); *Tucker v. Apple Comput., Inc.*, 493 F. Supp. 2d 1090, 1101 (N.D. Cal. 2006) (pre-*Qualcomm* decision noting that "the existence of valid business reasons in antitrust cases is generally a question of fact"); *In re Apple iPod iTunes Anti-Trust Litig.*, 2010 WL 2629907, at *23 (N.D. Cal. June 29, 2010) (evaluating business justification defense to a claim not alleging a refusal to deal)).

**_BiT Does Not Allege Similarly Situated Customers_**: BiT's opposition confirms its failure to allege that Coinbase continues to list similarly situated digital assets. Contrary to BiT's assertion, *MetroNet* and its progeny do not hold that the question is "whether Coinbase provides its listing services to non-competitors" (Opp. 6) but whether Coinbase has refused to deal with BiT on the same terms that it deals with similarly situated customers. *See Qualcomm*, 969 F.3d at 994; *Reveal Chat*, 471 F. Supp. 3d at 1002 (plaintiff failed to allege defendant "refused to provide products to its competitors that were already sold in a retail market to other customers"). BiT tries to satisfy this requirement by referencing "memecoins" listed by Coinbase rather than other "wrapped" Bitcoin assets. Opp. 6. BiT points to no other comparable digital asset—memecoin or not—associated with an accused fraudster that Coinbase allowed to be traded. And BiT points to no allegations that would establish relevant similarities (or diminish the key differences) between a memecoin and wrapped Bitcoin. To the contrary, BiT alleges that BiT "unlock[s] new value" by holding Bitcoin in trust and issuing wBTC for use on other blockchains, and that "memecoins … unlike wBTC have no inherent value." Compl. ¶¶27, 30, 62. It is no surprise, then, that Coinbase might treat these assets differently than wBTC, which BiT alleges requires holding "in trust" the

most famous and most valuable cryptocurrency." *Id.* ¶¶25, 27. Wrapped Bitcoin requires trust in the custodian to whom the customer is giving their Bitcoin to not misappropriate it, presenting a different in-kind risk from other types of assets like memecoins. Allowing plaintiffs like BiT to advance to discovery without alleging facts showing that the defendant continued to deal with customers who were actually similarly situated "runs the risk of opening the floodgates to potential litigation," *In re DRAM Antitrust Litigation*¸ 536 F. Supp. 2d 1129, 1141 (N.D. Cal. 2008), both from managers of delisted assets (like BiT) and against assets that exchanges continue to list.

### 2.  *Harcourt* Applies And Dooms BiT's Disparagement Theory

The Ninth Circuit held in *Harcourt* that monopolization claims based on "false statements and implications" (Opp. 7) should "presumptively be ignored." *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Pubs., Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997). BiT asks the Court to discard that binding precedent for a single unpublished district court case that BiT argues recognized an exception. Opp. 7. Not so. That case found that *Harcourt* did not apply because the alleged "scheme [did] not rely on whether [defendant] disparaged [plaintiff]." *Arista Networks, Inc. v. Cisco Sys.*, 2018 WL 11230167, at *13 (N.D. Cal. May 9, 2018). BiT's claims *do* rely on alleged "false statements" (Opp. 7), so *Harcourt* applies. BiT must plead facts to support all six of the demanding *Harcourt* factors. *Harcourt*, 108 F.3d at 1152. BiT fails to do so.[3]

**BiT Does Not Allege Clearly False Statements**: BiT argues that Coinbase made "false" statements about its decision to delist wBTC because "Coinbase did not perform an objective analysis against set standards." Opp. 7, 9; Compl. ¶58. Whether Coinbase's analysis was objective or otherwise could not make this statement clearly false since the statement does not allude to the mode of analysis. And the standards, incorporated by reference in the Complaint, explain that the analysis is subjective. Reply Decl. of Sonal N. Mehta ("Mehta Reply Decl."), Ex. A.

**BiT Does Not Allege Coinbase's Statements Were Not Susceptible to Neutralization**: BiT—which "manage[s] the minting and redemption of" tens of millions of dollars of cryptocurrency (Compl. ¶14)—claims it could not respond to a *tweet* about its failure to meet

---

[3] Coinbase responds to BiT's arguments with respect to materiality and likelihood of reasonable reliance in connection with its Lanham Act claim. *See infra* Section II.

Coinbase's listing standards. Though not necessary to rule in Coinbase's favor, the Court may take judicial notice of the fact that BiT has an X account and did respond directly to Coinbase's tweet.[4] BiT's (unpled) argument that "it is a much smaller company than Coinbase" (Opp. 9) identifies no barrier to neutralization like in *Emulex*, where the plaintiff, an alleged "new entrant," did "not have relationships with the [customers] allowing it to sufficiently rebut [defendant's] statements." *Emulex Corp. v. Broadcom Corp.*, 2010 WL 11595718, at *7 (C.D. Cal. June 7, 2010). BiT's other (unpled) theories of barriers to neutralization—the suggestion of "unknown negative information" about wBTC and that many people saw Coinbase's tweet—do nothing to suggest why BiT was unable to "push[] back,"[5] *Genus Lifesciences Inc. v. Lannett Co.*, 378 F. Supp. 3d 823, 842 (N.D. Cal. 2019), with, for example, a simple tweet.

## B.    BiT Does Not Plead Causal Antitrust Injury

To survive a motion to dismiss, BiT must show an injury to competition, an injury to itself, and "the chain of causation between" them. *Sabol v. PayPal Holdings, Inc.*, 2024 WL 3924686, at *3 (N.D. Cal. Aug. 23, 2024). BiT shows none.

In response to Coinbase's showing that BiT fails to allege the delisting reduced the fees BiT earns from wBTC, BiT cries "misrepresentation" but only confirms the accuracy of that charge. BiT's primary theory of injury is not financial harm, but an alleged decline in wBTC circulation of 5% following Coinbase's delisting announcement on November 19. Opp. 16. When pressed by the Court to articulate BiT's evidence of injury during the TRO hearing, counsel confirmed that this was the primary claimed injury: "[t]he fact that immediately after the announcement, wBTC circulation dropped by more than 5 percent." Dkt. 32 at 8:12-13. BiT never alleges facts that show this decline costs it revenue. That is particularly true because BiT alleges that it generates revenue through "burning of wBTC" (Compl. ¶144), *i.e.*, when a wBTC holder

---

[4]  @BiTGlobalTrust, X (Nov. 20, 2024 11:00 AM), https://x.com/BiTGlobalTrust/status/1859265686012596275. The Court may take judicial notice of X accounts because they are "publicly accessible websites whose accuracy and authenticity is not subject to dispute." *Reveal Chat Holdco LLC v. Facebook, Inc.*, 2021 WL 1615349, at *4 (N.D. Cal. Apr. 26, 2021).

[5]  BiT incorrectly accuses Coinbase of "misstat[ing] the standard" for this prong of *Harcourt*. Coinbase directly quoted *Harcourt*, which requires a plaintiff to establish that alleged misrepresentations were "not readily susceptible of neutralization." Mot. 9.

1    redeems their wBTC for the underlying Bitcoin (*see id.* ¶30). Thus, the Complaint implies BiT

2    may have *benefited* from any decline in circulation as a result of the delisting, since any such

3    decline would have had to involve customers burning their token.

4        Whatever BiT's claimed injury, it fails to tie that injury—as it must—to a reduction in

5    competition. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995). BiT argues

6    that delisting wBTC harmed competition by "send[ing] a signal" that other cbBTC competitors

7    may be delisted at Coinbase's whim, and "discourag[ing]" third party app developers from

8    developing apps for other wrapped Bitcoins. BiT also claims that "excluding wBTC from third

9    party applications excludes it as a potential option for users." Opp. 10; Compl. ¶79. But Coinbase

10   is not excluding BiT from third party applications, so this argument fails. Compl. ¶84. More

11   broadly, these conclusory allegations lack supporting facts to make them plausible, and the Court

12   should not credit them. *See Reveal Chat*, 471 F. Supp. 3d at 998.

13       But even if the Court does credit these "harms," BiT still does not plead an antitrust injury

14   because it fails to allege that its loss "flows from [an] anticompetitive aspect" of Coinbase's

15   behavior. *Rebel Oil*, 51 F.3d at 1444. All it can say is that "immediately after pleading injury to

16   itself, BiT expressly pled that 'competition in the market for wrapped Bitcoin has been injured *as*

17   *well*.'" Opp. 9. But asserting that conduct *also* affected competition is a far cry from sufficiently

18   showing that BiT's injury "flows" from these alleged harms. *Rebel Oil*, 51 F.3d at 1444. Far from

19   showing that Coinbase "misrepresent[ed]" anything (Opp. 19), BiT's opposition confirms it did

20   not plead a cognizable antitrust injury.

21       **C.    BiT Does Not Adequately Allege A Product Or Geographic Market**

22       BiT points to nothing in its Complaint that can cure its failure to allege relevant markets

23   and argues that dismissal is appropriate only where "the alleged market suffers a fatal legal defect."

24   Opp. 10; *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1044-45 (9th Cir. 2008). But *Newcal*

25   itself noted that among these is a failure to "encompass the product at issue as well as all economic

26   substitutes for the product." 513 F.3d at 1045. The Complaint suffers from precisely this defect: it

27   pleads no facts as to the "reasonable interchangeability of use or the cross-elasticity of demand

28   between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294,

325 (1962); *see also Gamboa v. Apple Inc.*, 2025 WL 660190, at *7 (N.D. Cal. Feb. 28, 2025). Nor is there some sort of bar against dismissing claims that do not plausibly plead a geographic market. Courts routinely dismiss complaints with these deficiencies. Mot. 11-12

BiT also tries to support its product market definition with facts that BiT "expects to be able to prove" but did not allege. Opp. 10-11. The same is true for its geographic market allegations: the opposition makes a late effort to plead facts establishing a geographic market of the United States, but never cites the Complaint. *Id.* at 12-13. BiT may regret not including these allegations in its Complaint, but it "may not be amended by briefs in opposition to a motion to dismiss." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010).

### D.    BiT Does Not Allege Monopoly Power Or Dangerous Probability Of Obtaining Monopoly Power

"[T]o state a claim for monopolization under [S]ection 2 of the Sherman Act, the plaintiff must prove that … the defendant possesses monopoly power in the relevant market." *SC Innovations, Inc. v. Uber Techs., Inc.*, 434 F. Supp. 3d 782, 790 (N.D. Cal. 2020). BiT does not even attempt to establish that the Complaint adequately pleads monopoly power in the market for wrapped Bitcoin. Opp. 13-15; Compl. ¶¶81-89. This compels dismissal.

With regard to attempted monopolization, BiT concedes that it must plausibly allege facts to support Coinbase having "a specific intent to monopolize and the dangerous probability of success." Opp. 13. BiT tries, to no avail, to contend that *Thurman* does not matter because it was a case resolved at summary judgment. *Id.* at 14. *Thurman* articulates the elements of an attempted monopolization claim. *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1378 (9th Cir. 1989). Those standards—set out long before *Bell Atlantic Corp. v. Twombly*'s requirement that plaintiffs plead more than "a formulaic recitation a cause of action's elements," 550 U.S. 544, 545 (2007)—apply to a plaintiff's allegations at the pleading stage just as they do to a plaintiff's proof at the summary judgment stage. *See, e.g.*, *Vinci v. Waste Mgmt., Inc.*, 1994 WL 478163, at *6 (N.D. Cal. Aug. 25, 1994) (applying *Thurman* standard at motion to dismiss). BiT identifies only the legal standard, not any supporting factual allegations. Opp. 14. And critically, "[e]valuating a defendant's probability of achieving monopoly power requires … consideration of the same monopoly power principles" applicable to BiT's monopolization claim. *Gamboa*, 2025

WL 660190, at *11 (citing *Rebel Oil*¸ 51 F.3d at 1438). The Complaint does not even allege Coinbase's market share in wrapped Bitcoin, nor does BiT dispute it is "the dominant seller of wrapped Bitcoin." Mot. 12. It is thus implausible that *Coinbase* has a dangerous probability of achieving monopoly power. *Gamboa*, 2025 WL 660190, at *11.

If BiT is arguing that Coinbase used its position in an upstream market attempting to monopolize a downstream market, it must also allege that Coinbase had monopoly power in the upstream market. *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 545 n.12, 547 (9th Cir. 1991). BiT did not do so, and its opposition confirms there is nothing in the Complaint to even define the upstream market—other than the undefined term "centralized cryptocurrency exchange" and references to Encyclopedia Britannica. Opp. 15. Naming a product, encyclopedia entry or not, is not sufficient to define a relevant market, even at the motion to dismiss stage. *See Tundra, Inc. v. Faire Wholesale, Inc.*, 2024 WL 589097, at *1 (N.D. Cal. Feb. 13, 2024).

BiT similarly fails to explain how Coinbase's control over its own "centralized cryptocurrency exchange" creates a "dangerous probability." Opp. 15. The Supreme Court has never recognized the essential facilities doctrine and its vitality is suspect. *See Trinko*, 540 U.S. at 410-11. Regardless, BiT fails to explain why Coinbase's exchange is an essential facility. BiT argues Coinbase's control of users "whom BiT can no longer reasonably access" counts as an essential facility, citing *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1185 (9th Cir. 2016). Opp. 15. But BiT misstates *Aerotec*'s holding and ignores BiT's allegations. *Aerotec* reaffirmed that "where access exists, the essential facilities doctrine serves no purpose." 836 F.3d at 1185 (quoting *Trinko*, 540 U.S. at 411). Of course, BiT has alleged that alternative access does exist in the form of other exchanges (Compl. ¶41), as evidenced by its allegation that the delisting announcement—if it had any effect at all—only reduced the amount of wBTC in circulation by 5%. *Id.* ¶163. And critically, BiT never alleges that Coinbase's exchange handles any meaningful volume of wBTC activity—nor could it, because Coinbase's share of global trading in wBTC is less than 1%. *See* Dkt. 25-18 ¶40. BiT does not (and cannot) allege that Coinbase cut off all access to wBTC, and so does not satisfy the essential facilities doctrine. *See Aerotec*, 836 F.3d at 1185.

1    **II.    BiT's Lanham Act Claim Fails**

2        BiT's Lanham Act claim fails because it relies on assumptions that are not supported by its

3    Complaint: that Coinbase's delisting decision implied statements of fact; that these implied

4    statements of fact were false; that users understood them; that they influenced user decisions; and

5    finally, that BiT was injured. Mot. 18. BiT's opposition cures none of these defects.

6        Coinbase's motion showed that BiT failed to allege that the challenged statements are false

7    because they either cannot plausibly be false or are nonactionable opinions. Mot. 9, 17. Rather

8    than respond substantively, BiT wrongly accuses Coinbase of "misrepresent[ing] the law." Opp.

9    17. In fact, Coinbase recited the elements of a Lanham Act claim, including the requirement of "a

10   false statement of fact [by the defendant] in a commercial advertisement." Mot. 16-17. Coinbase

11   then explained the legal standards for claims premised on false implications, and why BiT's

12   allegations fall short. *See id.* at 17. BiT offers no cogent response. In an apparent effort to deflect

13   from the merits, BiT contends that it is "odd[]" for Coinbase to rely on a case that "rejects

14   Coinbase's own argument." Opp. 17-18. BiT overlooks that this case involved several challenged

15   statements, only one of which was found to be actionable under the Lanham Act, the others of

16   which more closely resemble the challenged statements here. *See Coastal Abstract Serv., Inc. v.*

17   *First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (finding "vague and subjective"

18   statements to be nonactionable). BiT also tries to distinguish nonactionable statements about future

19   financial condition from actionable false statements that are "alleged in current terms." Opp. 17.

20   But BiT's scattershot allegations that Coinbase's statements foretell "undisclosed negative

21   information" about wBTC, which may "cause fear, uncertainty, and doubt" among customers

22   (Compl. ¶164), are exactly the type of speculative statements that are nonactionable. *See Oracle*

23   *USA, Inc. v. Rimini St., Inc.*, 2010 WL 4386957, at *3 (D. Nev. Oct. 29, 2010). Glaringly absent

24   from all of this: any explanation for why the challenged statements are false by implication.

25       BiT cites cases that highlight the defects of its Lanham Act claim. Opp. 18. In *Beyond*

26   *Blond Productions, LLC v. Heldman*, the plaintiff alleged that "at least five [customer] accounts

27   found Defendants' negative review" of plaintiff's product to be "helpful" in deciding not to

28   purchase the product. 2022 WL 2036306, at *5 (C.D. Cal. Mar. 3, 2022). BiT alleges at best a

correlation between the statements and a decrease in wBTC supply, not that it lost any customers *due to the challenged statements*. That distinction is critical because any loss in customers is a function of the association with Sun, not Coinbase's delisting announcement. BiT's reliance on *Bobbleheads.com, LLC v. Wright Brothers, Inc.*, 259 F. Supp. 3d 1087 (S.D. Cal. 2017), is also misplaced. Opp. 18. Unlike the statements alleged to be literally false in *Bobbleheads*, *see* 259 F. Supp. 3d at 1099, Coinbase's statements "are implied false assertions of fact" (Compl. ¶97), which do not benefit from the presumption of consumer deception. *See Suzie's Brewery Co. v. Anheuser-Busch Cos.*, 519 F. Supp. 3d 839, 846 (D. Or. 2021). BiT's claim that Coinbase made "false statements to the Court" by only quoting half of ¶102 is meritless. Opp. 18. Coinbase explained that BiT failed to allege materiality because the "Complaint alleges only the element itself," and quoted the portion of ¶102 that did just that. Mot. 17. Neither the remainder of ¶102 nor anything else in the Complaint "establish[es] a causal relationship between Coinbase's statements and changes in the supply of wBTC." *Id.*

Rather than respond to Coinbase's showing, BiT argues "[t]he Lanham Act has a low injury standard." Opp. 19. This bizarre assertion is wrong. *See TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1016 (N.D. Cal. 2012) (applying "ordinary notice pleading standards," at minimum, to Lanham Act claims). Regardless, a "low" injury standard is not no injury standard. BiT fails to identify any allegations supporting a diversion of sales or a loss of goodwill. Mot. 18.

## III.    BiT's California Unfair Competition Law Claims Fail

***BiT Lacks Statutory Standing***: BiT has not plausibly alleged "economic injury caused by unfair competition." *Zhang v. Super. Ct.*, 57 Cal. 4th 364, 372 (2013); Mot. 18. Contrary to BiT's argument, Coinbase never said that BiT "*only* seeks public injunctive relief." Opp. 19. The point is that BiT's request for injunctive relief cannot cure its lack of UCL standing, because it does not seek to remedy an economic injury caused by unfair competition. BiT's request for restitution also does not confer UCL standing because "the standards for establishing standing under section 17204 and eligibility for restitution under section 17203 are wholly distinct." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 335-36 (2011). And, of course, BiT's request for attorneys' fees cannot confer standing either. *Cordon v. Wachovia Mortg.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011).

1    Finally, even if BiT was seeking public injunctive relief—which it is not (Mot. 18-19)—that does

2    not cure its lack of standing. *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 958-59 (2017); *Kwikset*

3    *Corp.*, 51 Cal. 4th at 337 ("the availability of an injunction depends on standing to sue").[6]

4         ***BiT Fails To Plausibly Allege A Claim Under The UCL's Unfair Prong***: Even if BiT had

5    UCL standing, its UCL unfairness claim is not plausibly alleged. BiT never explains how the

6    Complaint alleges conduct meeting the unfairness standard set forth in *Cel-Tech Communications,*

7    *Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 186-87 (1999). BiT does not dispute

8    that the introduction of cbBTC *promoted* competition. Mot. 19. That leaves only BiT's refusal to

9    deal theory (Opp. 20), which falls with its antitrust claims. *Supra* Section I.A.1. Should the

10   balancing test apply, BiT points to its allegations of a decline in wBTC circulation (Opp. 20;

11   Compl. ¶¶132, 139), but it remains unable to explain how that decline reflects harm to users, rather

12   than users choosing to exit the alleged market. Mot. 20.

13        ***BiT Fails To Plausibly Allege A Claim Under The UCL's Unlawful Prong***: BiT offers

14   no convincing argument that the Complaint adequately alleges a UCL unlawful claim. As

15   Coinbase's motion explained, BiT failed to establish a predicate FTC Act violation for the same

16   reasons it failed to establish UCL unfairness under *Cel-Tech*. Mot. 20. BiT responds by quoting a

17   footnote in *Cel-Tech* clarifying that its unfairness standard does not extend to the UCL's unlawful

18   and fraudulent prongs. Opp. 20-21. Fair enough. But because BiT's UCL claim alleges a predicate

19   FTC Act violation, and because *Cel-Tech* drew directly from the FTC Act, *see* 20 Cal. 4th at 185-

20   86, BiT's failure to meet *Cel-Tech*'s unfairness standard means it cannot meet the FTC Act's nearly

21   identical standard.

22        Next, BiT contends that because the FTC Act does not expressly prohibit private causes of

23   action, it is possible to shoehorn an FTC Act claim into a UCL claim. Opp. 21. The Ninth Circuit

24   has said otherwise in a case BiT conveniently ignores. *See O'Donnell v. Bank of Am., N.A.*, 504 F.

25   App'x 566, 568 (9th Cir. 2013). Another unpublished opinion created a split of authority on this

26   question. *See Rubenstein v. Neiman Marcus Grp. LLC*, 687 Fed. App'x 564 (9th Cir. 2017). But

27

28   [6] BiT's argument regarding motions to compel arbitration (Opp. 19) is a non-sequitur. The cited cases interpreting the distinction between private and public injunctive relief involved the enforceability of arbitration provisions. Coinbase is not seeking to compel arbitration.

the weight of authority since *Rubenstein* supports Coinbase. *See, e.g.*, *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *8 (N.D. Cal. Feb. 22, 2024); *BMA LLC v. HDR Glob. Trading Ltd.*, 2021 WL 4061698, at *16 (N.D. Cal. Sept. 7, 2021); *Quick Dispense, Inc. v. Vitality Foodserv., Inc.*, 2024 WL 2925589, at *13 (C.D. Cal. June 4, 2024).

Even if BiT could bring this claim, it did not adequately allege it. BiT relies exclusively on a 2022 FTC Policy Statement. Opp. 21-22; Compl. ¶¶110-18. But the FTC itself has suggested that its policy statements lack "the force of law." *FTC v. Wellness Support Network, Inc.*, 2011 WL 4026867, at *2 (N.D. Cal. Sept. 12, 2011). And BiT points to nothing in the policy statement expanding the scope of liability beyond the Sherman Act, dooming this theory.

***BiT Fails To Plausibly Allege A Claim Under The UCL's Fraudulent Prong***: BiT does not argue that Coinbase's statements about the delisting decision were false. Opp. 22; Mot. 22. As to omission, BiT argues pretext based on its allegation that Coinbase does not publish listing standards (Compl. ¶¶57-58), but Coinbase does publish listing standards—a fact the opposition does not grapple with. And even assuming there were an omission, Coinbase has no alleged duty to disclose and thus its statements cannot support a UCL fraud claim. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864-65 (9th Cir. 2018). To get around that, BiT introduces a new theory—that "[c]ryptocurrency held by Coinbase meets the legal requirements for a special deposit." Opp. 23. This theory fails at every level. First, it is unpled. Second, it requires that Coinbase is a bank. *See Van de Kamp v. Bank of Am.*, 204 Cal. App. 3d 819, 858 (1988) ("The relationship between a *bank* and a depositor depends upon the type of deposit made—whether it is a general deposit or a special one."). But BiT does not allege Coinbase is a bank and it obviously is not. Compl. ¶38 ("Coinbase is a centralized cryptocurrency exchange."). It is no surprise then that the Complaint omits any of the basic allegations required for such a theory, including plausible allegations of "the parties' agreement … that the exact amount of money deposited was to be returned or the money was to be paid out by the bank for a specific purpose." *Goldblatt v. FDIC*, 105 F.3d 1325, 1328 (9th Cir. 1997). Next, the Complaint fails to allege Coinbase's "exclusive knowledge"—Coinbase's relevant listing standards are public (Mot. 3 & n.3; Mehta Reply Decl. Ex. A) and any information Coinbase had about BiT and wBTC was either public or provided by BiT itself. As to partial

misrepresentation, BiT contends that Coinbase had a duty to disclose because it omitted that the true reason for the delisting was supposedly "to crush" wBTC. Opp. 23; Compl. ¶137. This is circular, and as explained earlier, BiT's only support for this argument is the incorrect allegation that Coinbase does not publish listing standards. Compl. ¶¶57-58.

In any case, even if there were plausible allegations to support BiT's theories of duty, its UCL fraud claim fails because BiT has not alleged reliance on "the truth or falsity of [Coinbase's] statement"—that users chose to burn wBTC *because of* its failure to meet Coinbase's listing standards—and "not merely on the fact it was made"—that users chose to burn wBTC because it would soon be delisted. *Key v. Qualcomm Inc.*, 2025 WL 597604, at *8 (9th Cir. Feb. 25, 2025).

## IV.    BiT's Tortious Interference Claims Fail

BiT does not even attempt to defend its deficiently pled tortious interference claims, acknowledging it failed to adequately allege third parties with whom it has economic relationships. Opp. 23. Leave to amend should be denied because BiT's opposition does not identify the relevant third parties. *See Varlack v. Ohio Sec. Ins. Co.*, 2023 WL 2012836, at *2 (N.D. Cal. Feb. 15, 2023). Even if BiT could cure this defect, its claims still fail because it did not adequately plead economic harm. BiT faults Coinbase for "citing only to the antitrust injury section of its brief." Opp. 23. But BiT alleges the same harms for its interference claims as it does for its antitrust claims. *Compare* Compl. ¶150 ("forc[ing] users to begin selling their wBTC"), *with id.* ¶¶78-79 (users "forced to liquidate their positions"). These allegations are insufficient for either claim. Mot. 15-16, 23. In any case, BiT has not plausibly linked this supposed harm to a reduction of its revenue. *Id. at* 16.

BiT's intentional interference claim also fails because BiT did not adequately allege an independently wrongful act. *See Marin Tug & Barge, Inc. v. Westport Petrol., Inc.*, 271 F.3d 825, 831 (9th Cir. 2001). BiT again invites the Court to disregard blackletter law by invoking an out-of-district case to suggest *Marin Tug* does not apply. Opp. 24 (citing *Cappello Glob., LLC v. Temsa Ulasim Araclari Sanayi Ve Ticaret A.S.*, 2024 WL 4494673, at *17-18 (C.D. Cal. Oct. 15, 2024), *amended and superseded by* 2024 WL 5330030 (C.D. Cal. Dec. 19, 2024)). But *Capello* is inapposite; it involved the application of the "not-a-stranger" defense to tortious interference, *see* 2024 WL 5330030, at *17-18, not the wrongful act requirement. Mot. 23-24.

1   Finally, BiT's negligent interference claim fails because the Complaint does not adequately

2   allege Coinbase owed a duty of care. BiT relies on Coinbase's alleged blameworthiness to establish

3   duty. But "a defendant's conduct is blameworthy only if it was independently wrongful apart from

4   the interference itself." *Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1187 (1998). There are no

5   allegations of Coinbase's independently wrongful acts. Mot. 23-24. The best BiT can do is vaguely

6   reference the duty "everyone owes … to prevent others from being injured by their conduct." Opp.

7   24. If that were enough, the duty requirement would be meaningless.

## V.    BiT's Trade Libel Claim Fails

9   To salvage its trade libel claim, BiT again accuses Coinbase of "flatly misstat[ing] the law."

10  Opp. 25. But it is BiT that misstates the law, citing defamation cases to incorrectly suggest that

11  opinions can be actionable trade libel, even though these "torts are distinct and must be treated

12  individually." *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1081

13  (C.D. Cal. 1998). "[S]tatements of opinion alone will not support a cause of action for trade libel."

14  *Piping Rock Partners Inc. v. David Lerner Assocs.*, 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013).

15  BiT also questions Coinbase's reliance on *Auvil v. CBS '60 Minutes'*, 67 F.3d 816 (9th Cir. 1995)

16  because it applied Washington law. Opp. 25. But *Auvil* relied on the Second Restatement of Torts,

17  and "California, like Washington, has adopted the Restatement formulation of trade libel law."

18  *Films of Distinction*, 12 F. Supp. 2d at 1082 (citing *Auvil*, 67 F.3d at 822). BiT—like the plaintiff

19  there—"points to no principled distinction between California law and Washington law that would

20  make the Ninth Circuit's analysis in *Auvil* inapplicable to California law." *Id.*

21  While BiT suggests that it may be bringing a libel *per se* claim (Opp. 25), it cannot

22  refashion its allegations to support such a claim because "[a] libel *per se* is a writing, which, upon

23  its face, falls within the definition of a libel," *Rosenberg v. J.C. Penny Co.*, 30 Cal. App. 2d 609,

24  619 (1939). BiT brought its trade libel claim on "*implied* false assertions of fact" (Compl. ¶160);

25  it cannot change its mind and argue in its opposition that the statements are facially libelous.

## CONCLUSION

27  BiT had full opportunity to explain the plausibility of its allegations and failed at every

28  turn. The Court should grant Coinbase's motion to dismiss with prejudice.

1    Dated: March 4, 2025                          Respectfully submitted,

2                                                  By: */s/ Sonal N. Mehta*
                                                   SONAL N. MEHTA
3

4                                                  *Attorney for Defendant Coinbase Global, Inc.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on this 4th day of March, 2025, I electronically transmitted the

3    foregoing document to the Clerk's Office using the CM/ECF System, which will send notification

4    of such filing to all counsel of record.

5

6                                              By:    */s/ Sonal N. Mehta*
                                                      Sonal N. Mehta

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28